CUVIER PRESS CLUB, APPELLANT, v.
FOURTH & RACE STREET ASSOCIATES,
LTD., APPELLEE.

(No. C-790846—Decided
January 28, 1981.)

Arthur C. Church Co., L.P.A., and Mr. Arthur C. Church, for appellant.

Messrs. Cohen, Todd, Kite & Stanford and Mr. Paul A. Nemann, for appellee.

PALMER, J. A complaint for declaratory judgment was filed by plaintiff-appellant, Cuvier Press Club, against defendant-appellee, Fourth and Race Street Associates, Ltd., on June 6, 1978. Plaintiff sought a declaration of rights and obligations of the parties under a written lease agreement wherein plaintiff was the tenant and defendant the landlord. The crux of the complaint concerned the effect of a subsequent memorandum to the lease agreement, alleged to have modified the original terms. On August 7, 1978, defendant moved for summary judgment on the issue of the alleged modification. On November 22, 1979, following a judgment in favor of plaintiff in a matter unrelated to the instant proceedings, the trial court granted defendant's motion for summary judgment and dismissed plaintiff's complaint for declaratory relief. On appeal, plaintiff challenges the propriety of that judgment.

Materials submitted in connection with the motion for summary judgment reveal that plaintiff, a not-for-profit corporation operated primarily as a social club, entered into a written lease agreement on July 31, 1973, effective October 1, 1973, wherein the lessor, at that time the Fourth and Race Street Corporation, conveyed to plaintiff for a period of ten years, with a right to renew for another ten-year term, the entire fourteenth floor of lessor's building located in downtown Cincinnati, Ohio. In May of 1975, in lieu of foreclosure, the original lessor deeded the building, including the demised premises, to Lake States Investment, Inc. (Lake States), a wholly owned subsidiary of the company that held the mortgage. In January, 1977, Lake States deeded the property to defendant, a limited partnership whose general partner is Chelsea Moore Company. During the term of ownership by Lake States, Chelsea Moore Company served as the managing agent of the building.

Although the original written lease agreement was not recorded, defendant does not challenge its validity *inter se* and concedes that it had knowledge of the existence of the lease prior to taking title to the property from Lake States. Among other things, the lease agreement contains a provision dealing with building services, the relevant portion of which con-

cerns air conditioning, and reads as follows:

"Lessor will provide air conditioning and heat during its normal building hours, from 8:00 A.M. — 6:00 P.M. Monday to Fridays, 8:00 A.M. — 1:00 P.M. on Saturdays, excluding Sundays and Holidays."

During the period prior to the effective date of the lease, while plaintiff entered upon the premises to renovate and make leasehold improvements, it was discovered that air conditioning was required for longer periods of time than provided in the lease agreement due to the extended hours of plaintiff's operation. After successful negotiation with the original lessor, plaintiff received a letter from the lessor, dated October 18, 1973, and signed on behalf of the lessor by the Building Manager, the body of which letter reads as follows:

"The owners of Insight Towers have agreed to operate the building air conditioning system on a twenty-four hour per day basis during the 1974 season and thereafter. They have also agreed the charge to Cuvier Press Club for this service will be computed monthly and the charge is not to exceed $2,000.00 per season.

"Should you have any questions, feel free to call."

It is plaintiff's contention that this letter, signed by the authorized agent of the original lessor, serves as a valid and enforceable modification of the lease agreement, thus binding any successive owner taking with actual knowledge of the modification, in spite of the failure to record the original lease agreement or the alleged modification.

In its motion for summary judgment, defendant asserted four separate bases in support of its position that the attempted modification is invalid, and thus unenforceable against subsequent owners: (1)

the provisions of the letter were never complied with by the original lessor or the subsequent landlords, indicating, presumably, no mutual assent to be bound by the terms; (2) the letter was not recorded and, therefore, not binding upon subsequent purchasers, Lake States and defendant, who took without actual knowledge of the modification; (3) the letter was not executed in accordance with the formal requisites of the Ohio statute of conveyances, R.C. 5301.01, which requires two witnesses and an acknowledgement before a notary public for any lease of an interest in land; and (4) the letter failed to comply with the Ohio statute of frauds, R.C. 1335.04, which requires that a lease agreement for any interest in lands be in writing and signed by the party, or his agent, against whom it is charged.

Pursuant to Civ. R. 56(C), and following the submission of supporting memoranda, affidavits, exhibits and arguments from both parties, the trial court granted the motion for summary judgment, dismissed plaintiff's complaint, and entered judgment thereon. The trial court did not, however, indicate upon which of the above reasons it based its judgment. Plaintiff challenges each basis in four separate assignments of error[1] presented for our review. If plaintiff is incorrect in its position on these issues, any one of which might serve to sustain the action of the trial court, it follows that the judgment must be affirmed and the appeal must fail. It is, therefore, necessary for us to determine, after viewing the evidence most strongly in favor of plaintiff, whether there existed, as plaintiff claims, genuine issues of material fact as to each such issue, and that, accordingly, summary judgment was improperly entered. See *Statler* v. *International Brotherhood of Electrical Workers* (1977), 51 Ohio St. 2d 36 [5 O.O.3d 20]; *Hun-*

---

[1] In actuality, there is but one assignment of error—that the trial court erred in granting summary judgment—with four issues of law subsidiary thereto. For purposes of clarity, however, we shall follow the appellant's framing of the assignments.

*tington National Bank* v. *Watters* (1976), 50 Ohio App.2d 325 [4 O.O. 3d 275]. For the reasons stated below, we conclude that granting the motion for summary judgment was improper and accordingly sustain each assignment of error.

In the first instance, plaintiff argues that it was error for the trial court to have granted summary judgment on the first grounds asserted by defendant, *viz.*, that there existed no genuine issue of material fact that the provisions of the alleged letter modification were not implemented. While the relevance of this issue is far from clear to us, defendant appears to be asserting either that the failure to act on the modification indicated the absence of any initial assent to be bound by its terms, or that it had not been partly performed in a fashion removing it from the requisite formalities of execution. If the latter was intended, see the concluding paragraph of this opinion, *infra;* if the former, defendant's position is simply not borne out by the record. Thus, the affidavit of James Monnig contains factual allegations which, if true, provide a considerable measure of support for plaintiff's position that the modification had been implemented and partly performed during the 1976 season. Monnig states that he discovered that the charges for the extended air conditioning exceeded the stated $2,000 per season rate appearing in the October 18, 1973 letter, and that he, as President of the Club at that time, worked out a settlement with the landlord based upon the original provisions of the alleged letter modification. This account is also supported by the affidavit of Don Nunneker, who further averred that the then building management, Chelsea Moore Company, had actual knowledge of the modification provisions and that whenever disputes arose, and they were apparently frequent, the matters were settled either amicably or by litigation. Against this, defendant interposed the affidavits of several individual agents of the successive owners who generally denied that they treated the modification letter as binding and in no way implemented its provisions at any time during the period in question. From the foregoing brief recitation of factual allegations before the trial court, it is apparent that a genuine dispute existed as to material facts. Viewing the evidence most strongly in favor of plaintiff, it cannot be said, at this stage, that defendant was entitled to judgment as a matter of law. *Statler, supra; Watters, supra.* Accordingly, insofar as the trial court's decision was based upon grounds that a genuine issue of material fact did not exist concerning the mutual agreement to and subsequent implementation of the modification provisions, summary judgment was improper and the assignment of error is sustained.

In its second assignment of error, plaintiff asserts that it was incorrect for the trial court to grant summary judgment on a basis that there was no genuine factual issue as to whether defendant, a remote purchaser, had actual notice of the alleged modification. Plaintiff contends that, during the period in which Lake States owned the building, its agent, Chelsea Moore Company, had knowledge of the modification and actually implemented its provisions. Thereafter, it is asserted, defendant had actual knowledge of these circumstances because its general partner is the same Chelsea Moore Company. Defendant, on the other hand, asserts that the attempted modification is subject to the recording provisions of R.C. 5301.25, which protects subsequent bona fide purchasers who take without knowledge of unrecorded instruments by considering such instruments as fraudulent. In support of this position, defendant produced affidavits of agents of Lake States, who generally denied any knowledge of the modification provisions at the time the property was deeded to Lake States, but upon learning of the document's contents considered it to be an invalid modification of the lease. Again, as above, there existed a genuine

factual dispute as to the knowledge of the interim purchaser, a dispute which must be resolved prior to an adjudication of the merits of the claim.

It is not enough that Lake States or defendant treated the modification as legally invalid—that determination is irrelevant to the question of actual knowledge at the time of acquiring title to the property. *Riley* v. *Rochester* (1922), 105 Ohio St. 258. In this regard, the failure to record affects only plaintiff's ability to charge defendant with constructive notice of the modification. See *Dow* v. *Union National Bank* (1912), 87 Ohio St. 173. Weighing the evidence most strongly in favor of plaintiff, it cannot be said that an undisputed fact situation existed that would have entitled defendant to judgment as a matter of law. Accordingly, insofar as the judgment of the trial court may have been predicated upon grounds that the modification was not recorded and was therefore unenforceable against subsequent purchasers taking without knowledge, the assignment of error is sustained.

In its third assignment of error, plaintiff asserts that it was incorrect for the trial court to have granted summary judgment on grounds that the alleged modification failed to comply with the formal requisites of R.C. 5301.01,[2] *i.e.,* that the October 18, 1973 letter was neither signed by two witnesses nor attested to before a notary public. Plaintiff contends, to the contrary, that the lease modification in question is not subject to this provision of the statute of conveyances and, hence,

need not conform to the formal requisites mandated therein in order to be enforceable against the landlord. Similarly, in its fourth assignment of error, plaintiff asserts that it was improper for the trial court to have granted summary judgment because the memorandum alleged to be a modification did not satisfy the requirements of R.C. 1335.04,[3] requiring that a lease of any interest in lands be in writing and signed by the party granting it or his authorized agent. For the purposes of this review, we have combined these assignments for, in essence, our determination of both contentions turns on the singular issue of whether the alleged modification concerns an "interest in land," as that phrase is contemplated within the meaning of R.C. 1335.04 and 5301.01. For the reasons stated below, we conclude that it does not.

We note, preliminarily, that the language of R.C. 5301.01 does not purport to define the term "lease of any interest in real property," leaving such definition to be supplied by the common law. *National Bank* v. *Tennessee Coal, Iron & RR. Co.* (1900), 62 Ohio St. 564. In like manner, the language of R.C. 1335.04, although similar to that contained in R.C. 5301.01, offers no express guidance on the subject.

Our review of the common law of lease agreements indicates that, for the purposes of the laws relating to conveyances, a lease of an interest in land has traditionally been defined to include the limited act of a transfer, "***by way of demise of lands or tenements, for [a] life

---

[2] R.C. 5301.01 provides, in pertinent part: "A***lease of any interest in real property must be signed by the***lessor, and such signing must be acknowledged by the***lessor in the presence of two witnesses, who shall attest the signing and subscribe their names to the attestation. Such signing must be acknowledged by the***lessor before a judge of a court of record***or a***notary public***who shall certify the acknowledgment and subscribe his name to the certificate of such acknowledgment."

[3] R.C. 1335.04 provides: "No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law."

or lives, for years, or at will, but always for a less term than the party conveying himself has in the premises\*\*\*." (Footnotes omitted.) I Woodfall's Law of Landlord and Tenant (Web. Ed. 1890), pages 201-202 (*124). *The critical and the only indispensable elements of a lease of an interest in real property are the rights to exclusive possession of a certain quantity of land for a term certain.* Further, and to the same effect, it has been said that the essential feature distinguishing a lease of an interest in land from such other conveyances as licenses, easements and profits, is the fact of *exclusive possession for a determinable term of years*—the right to physical control at the exclusion of others. I American Law of Property (1952), pages 175-184. Thus, at common law, insofar as a lease is concerned, the "interest in land" or "interest of real property" referred to in the above statutes must refer to the rights and duties conveyed in an instrument defining the physical dimensions of a certain quantum of land or floor space, and the term of months or years granted to the exclusively occupying tenant.

In simpler days, when these statutes were drafted, an agreement defining the two essential elements of space and time perhaps sufficed for the usual agricultural, residential, or mercantile lease. It is rarely so today, as commercial and social complexities have demanded a greater sophistication in drafting leasehold interests, resulting in the incorporation into the lease of an endless variety of agreements or covenants ancillary to the space and time essentials, but nevertheless dictating important rights and duties of the landlord and tenant as to the property and to each other.

Modern decisional law, it is not surprising to note, has sensed this dichotomy, in recognizing the growth of leases into instruments incorporating aspects of both the traditional law of conveyances and the law of contracts. The traditional act of conveyancing thus operates to transfer to the lessee a possessory interest in a specific quantity of real property for an express term of months or years, and, as embodied in a lease agreement, is obviously the conveyance of an interest in land requiring the formalities of writing, execution, attestation, *etc.*, within the above statutory enactments. The fact that it may, and now usually does, contain other covenants or undertakings, contractual in nature and ancillary to the conveyancing essentials, such as rental agreements, agreements to provide heat and utilities, to undertake repairs, pay taxes, insurance, and so on, obviously has no extenuating effect on the necesssity of conforming this "mixed bag" with the formal requirements of the statutes. Where the lease contains the conveyancing essentials, it must comply with the formality statutes in addition to whatever else it may contain and however accurately such other provisions may be distinguished from transfers of an interest in the lessor's estate, or identified as contractual provisions operating to create an ongoing interchange of rights and duties between the parties of such a nature as not to affect the purely leasehold interest in the event of a breach. In this respect, then, the law of conveyances and the law of contracts, distant cousins though they be, are in practice, and insofar as the above statutes are concerned, woven into a single fabric.

Yet, this determination does not answer the immediate problem, where the *instrument in question* is not a lease, with its mixed purpose of conveyance and contract, but rather *a modification or amendment* to the lease agreement, directed solely to a contractual provision of the lease agreement to provide and pay for increased air conditioning, a covenant of a type generally held to be independent. 1 Friedman on Leases (1974), Section 1.1.

In this regard, both parties have directed us to cases in support of their respective positions and, generally, the distinctions set out above, although not

necessarily articulated as such, are approved or are implied. In *67 Corp.* v. *Elias* (1965), 3 Ohio App.2d 411 [32 O.O. 2d 541], the court held that an alleged renewal of a five-year lease, where the original lease contained no option or other provision for extension or renewal of the lease, constituted an independent conveyance of an interest in real property and, therefore, was void since it was not executed in compliance with the formalities of R.C. 5301.01. In *Schofield* v. *John R. Thompson Co.* (C.A. 6, 1940), 109 F.2d 432 [17 O.O. 75], the court held that alleged modification provisions, which attempted to alter the rental provisions and other terms of the original lease, were executory agreements that conveyed no interest in real property and, hence, need not have conformed to G.C. 8510 (now R.C. 5301.01). See, also, *John Shillito Co.* v. *Bassler* (1930), 38 Ohio App. 569 (oral ratification of oral release by agent held invalid as it concerns an "interest in land"); *Brashears* v. *Ebersole* (1921), 14 Ohio App. 23 (oral option to cancel lease and purchase held invalid as it concerned an "interest in land"). See, also, *Jolly* v. *Hopley* (1932), 12 Ohio Law Abs. 130; *Abraham* v. *Akron Sausage Co.* (1927), 34 Ohio App. 285 (assignments of leasehold interests held to be "interests in land").

The apparent contradiction offered by these cases disappears, however, when they are analyzed in light of the foregoing principles. Thus, it is apparent that the controlling element in *Elias* was the fact that the attempted modification touched upon common law characteristics of a possessory interest in land, *viz.,* the right to exclusive possession for a certain term of years (an attempt to renew a leasehold interest) and, therefore, was invalid under the statute of conveyances. See, also, *Cromwell* v. *Bissinger Candy Co.* (1920), 13 Ohio App. 216. In *Schofield,* on the other hand, the features of the attempted modifications—rental provisions—did not touch upon the traditional possessory elements of common law leaseholds of

real property and, therefore, need not have been executed in conformance with the formalities of the statute of conveyances.

Applying these principles to the instant case, we conclude that the attempted modifications concerning air conditioning and the expenses related thereto do not constitute "an interest in land," as used in R.C. 5301.01 or R.C. 1335.04, as they do not alter the fundamental possessory interests of either the landlord or the tenant. The October 18, 1973 letter contained provisions extending the air conditioning service hours in exchange for a consideration of $2,000 per season; it did not purport to expand the floor space of the Club or the duration of the lease. While it may be conceded, as defendant argues, that this was a significant departure from the original lease agreement, the modification was nonetheless an executory covenant, supported by adequate consideration, between parties competent to contract for such services.

Thus, under the common law concept of a leasehold interest in real property, and the modern decisional law construing that term, these provisions do not represent a lease of any real property within the meaning of R.C. 5301.01 or R.C. 1335.04. Rather, these provisions are to be considered as executory agreements containing mutually independent covenants between the lessor and the lessee. Accordingly, insofar as the trial court granted summary judgment on the bases that the modifications failed to conform to the requisites of R.C. 5301.01 or R.C. 1335.04, it was improper, and plaintiff's third and fourth assignments of error are sustained.

We need only add that, even if these modifications were held to concern a lease of an interest in land within the meaning of R.C. 5301.01 or R.C. 1335.04, which we have concluded is not the case, nevertheless, the equitable doctrine of part performance, duly raised to the trial court, is applicable to both the statute of frauds

and the statute of conveyances. *Delfino* v. *Paul Davies Chevrolet, Inc.*, (1965), 2 Ohio St.2d 282 [31 O.O. 2d 557]. From the recitation of facts set out at the outset of this decision, it is clear that a genuine issue of material fact existed with respect to the question of part performance and it would have been error for the trial court to grant summary judgment on this ground.

The judgment is reversed, and the cause remanded for further proceedings consistent with this opinion.

*Judgment reversed*
*and cause remanded.*

BLACK, J., concurs.[4]

---

[4] BETTMAN, P.J., participated in this case which was, however, decided after his resignation.