FERGUSON, Appellee,

v.

STRADER et al., Appellants.

[Cite as *Ferguson v. Strader* (1994), 94 Ohio App.3d 622.]

Court of Appeals of Ohio,
Clermont County.

No. CA93–02–010.

Decided Feb. 22, 1994.

*W. Kenneth Zuk,* for appellee.

*Gary A. Rosenhoffer,* for appellants.

WILLIAM W. YOUNG, Judge.

Defendants-appellants, James Strader and Jett Hill Farms, Inc., appeal the Clermont County Court of Common Pleas' January 19, 1992 judgment in favor of plaintiff-appellee, Norma Ferguson, for $20,477.50 in contract damages.

Appellants assert four assignments of error as follows:

Assignment of Error No. 1:

"The trial court erred to the substantial prejudice of appellants by denying the right to trial by jury after demand was made."

Assignment of Error No. 2:

"The trial court erred to the substantial prejudice of appellants by failing to consider appellants' Statute of Frauds and quantum meruit defenses."

Assignment of Error No. 3:

"The trial court erred to the substantial prejudice of appellant Strader by issuing a personal judgment against him."

Assignment of Error No. 4:

"The trial court erred to the substantial prejudice of appellants by failing to consider the affirmative defenses of payments and satisfaction."

This dispute centers around the boarding or pasturing of horses belonging to Jett Hill Farms, Inc. on thirty to forty acres of land surrounding Ferguson's residence in Pierce Township. Strader is apparently the majority or sole shareholder of Jett Hill Farms Inc. Frank Homan manages Jett Hill Farms and is the farm's sole employee and agent. In the spring of 1989, Homan approached Ferguson about boarding or pasturing horses on her property.

Ferguson testified that Homan offered to "pay the going rate" of $6 or $6.50 a day per horse. Ferguson asked Richard Ahrens to go to Jett Hill Farms to speak with Strader or Homan on her behalf, and to inspect the horses. Ahrens also testified that Homan offered to pay between $6 and $6.50 per horse per day. Martha Brown, Ferguson's secretary in 1989, testified that she recalled Ferguson and Homan agreeing to the $6.50 figure in Ferguson's office.

Homan testified, however, that during these discussions, no dollar figure was ever discussed. He testified that he "assumed" that Ferguson would provide pasture in exchange for a mare "safe in foal." Homan later admitted that no concrete terms existed when the horses were placed on the land.

The agreement between the parties was never reduced to writing; all negotiations were through Homan. Twenty horses, ten mares and ten foals, entered Ferguson's land in mid-July, 1989. According to Ferguson's complaint, all twenty horses remained on her land for eighty-eight days. Between October 15, 1989 and April 28, 1990, nine horses remained on the land for one hundred ninety-five additional days. After April 28, 1990, one horse stayed twenty more days. Appellants never challenged these calculations. Ferguson provided pasture and water; Homan fed and otherwise cared for the horses. A barn and

another structure were under construction when the horses first arrived; it is unclear in the record whether shelter was ever available.

Approximately eight months after the horses had entered Ferguson's land, Strader met with Ferguson on February 14 or 15 to propose a "racing partnership" between the parties. Ferguson sent a letter to Homan dated February 22 in which she declined Strader's proposal. The letter concluded with a request that Homan "talk to Jim regarding the boarding fees that are due since last July." Strader claimed that this was the first notice he had received concerning boarding or pasturing fees. Strader received another letter in early April in which Ferguson requested payment and stated that no horses could be removed until payment was made. Ferguson testified that before this letter was sent, Strader or Homan had been removing horses at night.

Strader and Ferguson discussed the matter over the telephone on May 9, 1990. Homan testified that shortly thereafter, the parties reached an oral agreement whereby Ferguson would accept two mares and a breeding season with "Shipping Magnate" as payment for boarding or pasturing the horses. Ferguson denied entering into any such agreement. Ferguson admits accepting a mare in exchange for reducing appellant's bill by $2,500.

Ferguson filed a complaint for damages on October 5, 1990. The case was assigned to Judge Watson, who referred the matter for arbitration. An arbitration award in favor of Ferguson was eventually filed on March 26, 1992. Appellants appealed the arbitration, and a notice of hearing was filed February 25, 1992, setting the matter for a telephone pretrial conference before Visiting Judge Spencer. Judge Watson had apparently recused himself, but the record is silent on this point. On April 10, 1992, one day after pretrial conference, appellants filed a jury demand almost one and one-half years after the last pleading directed to the issues had been filed. Judge Spencer denied that motion on August 5, 1992; no hearing was held and Ferguson never objected to appellants' jury demand.

■ Under appellants' first assignment of error, they argue that they were entitled to a jury trial under Civ.R. 38(B). Civ.R. 38(B) explicitly states that a jury demand must be made within fourteen days after service of the last pleading directed to the issues. Civ.R. 38(D) explicitly states that failure to comply with Civ.R. 38(B) constitutes a waiver of a party's right to trial by jury. Cf. *Cincinnati v. Bossert Machine Co.* (1968), 16 Ohio St.2d 76, 45 O.O.2d 420, 243 N.E.2d 105 (any constitutional guarantee of a jury trial nonetheless allows the legislative branch to establish procedures for obtaining the jury). Appellants do not contend that they complied with Civ.R. 38(B); rather, they argue that the trial court should have granted their demand pursuant to Civ.R. 39(B).

Civ.R. 39(B) provides:

"Issues not demanded for trial by jury as provided in Rule 38 shall be tried by the court; but, notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues."

Civ.R. 39(B) explicitly provides that it is within the trial court's discretion to grant a late demand for a jury trial; therefore, we will not overrule the trial court's decision absent an abuse of that discretion.

In *Frashner v. Travelers Indemn. Co.* (1974), 49 Ohio App.2d 1, 3 O.O.3d 78, 358 N.E.2d 886, the Ninth District Court of Appeals held that the trial court properly struck a jury demand filed thirty-three days before the trial date. The appellate court stated that defendant's untimely *demand* does not *per se* constitute a *motion* for a jury trial under Civ.R. 39(B). The court also stated that the fact that the opposing party would not be prejudiced by a jury trial is not enough to require the trial court to permit the request.

In *Scarvelli v. Smith* (Dec. 24, 1980), Lorain App. No. 3010, unreported, and *Suburban Community Hosp. v. Lindquist* (Dec. 24, 1980), Cuyahoga App. No. 42079, unreported, the appellate courts also upheld lower court decisions denying motions for a jury trial pursuant to Civ.R. 39(B). In *Scarvelli*, the moving party offered no explanation for waiting over thirteen months to make the motion; the court denied the motion because the moving party proffered no evidence warranting the lower court's exercise of favorable discretion. In *Lindquist*, the appellate court noted that the moving party's Civ.R. 39(B) request merely asserted the presence of excusable inadvertence and oversight, but failed to show that the absence of a jury would prejudice his case.

Here, appellants' Civ.R. 39(B) motion was not filed until almost a year and one-half after the last responsive pleading. Significantly, appellants waited nearly one and one-half months after they became aware that Judge Spencer would be hearing the case before they finally filed their jury demand. Appellants never submitted a memorandum supporting their late jury demand, or offered any rationale for filing the demand nearly one and one-half years late. In fact, appellants' jury demand does not even refer to Civ.R. 39(B) or the court's discretionary power under that rule.

Appellants never attempted to show that the absence of a jury would prejudice their case until this appeal. Appellants never attempted to establish excusable inadvertence or oversight. Now appellants point to the fact that it is unclear why a visiting judge took over the case, and argue under the circumstances the trial court should have granted the motion or at least ordered a hearing on the issue *sua sponte.* However, if appellants were so concerned over the potential

prejudice of hearing the case before the court, they should have taken some affirmative step beyond simply filing a late demand; they should have filed a supporting memorandum or a motion for a hearing on the issue.

The trial court's denial of appellants' jury demand did not amount to an abuse of discretion. Therefore, appellants' first assignment of error is overruled.

In appellants' second assignment of error, they argue that the trial court failed to consider their defense based on the Statute of Frauds. Appellants attempt to characterize the agreement between the parties as a lease. R.C. 1335.04 provides:

"No lease, estate, or interest, either of freehold or term of years, or any uncertain interest of, in, or out of lands, tenements, or hereditaments, shall be assigned or granted except by deed, or note in writing, signed by the party assigning or granting it, or his agent thereunto lawfully authorized, by writing, or by act and operation of law."

Generally, the term "interest in land" means some portion of the title or right of possession, and does not include agreements which may simply affect land. 51 Ohio Jurisprudence 3d (1984) 199–200, Statute of Frauds, Section 34. Thus, easements are "interests in land" subject to the Statute of Frauds, but licenses are not. *Id.* at 212–213, Sections 52 and 53; but, see, *Yeager v. Tuning* (1908), 79 Ohio St. 121, 86 N.E. 657 (oral license to make a specified use of realty, without conveying that realty, is within statute, and the license is revocable). "The critical and the only indispensable elements of a lease of an interest in real property are the rights to exclusive possession of a certain quantity of land for a term certain." *Cuvier Press Club v. Fourth & Race St. Assoc.* (1981), 1 Ohio App.3d 30, 34, 1 OBR 150, 154, 439 N.E.2d 443, 447.

We are not convinced that the agreement between these parties is a lease, estate or interest in land. Therefore, the Statute of Frauds should not apply. Even if this agreement were considered a lease, it is taken out of the Statute of Frauds by the doctrine of "part performance." See *Egner v. Egner* (1985), 24 Ohio App.3d 171, 24 OBR 261, 493 N.E.2d 999 (oral lease may be taken out of the Statute of Frauds by part performance); *Cuvier Press Club, supra* (doctrine of part performance is applicable to R.C. 1335.04). An agreement may also be removed from operation of the statute where one party detrimentally relies on the agreement and it is impractical or impossible to return the parties to their original positions. See *Weishaar v. Strimbu* (1990), 76 Ohio App.3d 276, 601 N.E.2d 587. The trial court could easily have found such detrimental reliance in the case now before this court. Appellants' second assignment of error is overruled.

■ Appellants assert in their third assignment that the trial court erred in issuing a personal judgment against appellant Strader. Strader is apparently the sole or majority shareholder of Jett Hill Farms, Inc. Both Strader and Jett Hill Farms filed an answer to appellee's original complaint. Under Strader's first affirmative defense, he denied personal liability. Strader, however, never filed a motion to dismiss on this ground. At trial, Strader never asserted lack of personal liability. There was no request for findings of fact or conclusions of law pursuant to Civ.R. 52.

■ A corporation is a separate legal entity from its shareholders, even where there is only one shareholder. *LeRoux's Billyle Supper Club v. Ma* (1991), 77 Ohio App.3d 417, 602 N.E.2d 685. However, the corporate fiction may be disregarded in certain circumstances. Under the "alter ego" doctrine, the corporate veil can be pierced when, among other reasons, those sought to be held liable dominate and control the corporation so completely that the corporation has no separate mind, will, or existence. *Link v. Leadworks Corp.* (1992), 79 Ohio App.3d 735, 744, 607 N.E.2d 1140, 1146, citing *Bucyrus Erie Co. v. Gen. Products Corp.* (C.A.6, 1981), 643 F.2d 413, 418. The party seeking to impose individual liability on a shareholder bears the burden of proving the existence of one of the grounds for piercing the corporate veil. *LeRoux's Billyle Supper Club, supra,* 77 Ohio App.3d at 423, 602 N.E.2d at 689.

Although the appellee, Ferguson, should bear the burden of demonstrating some grounds for piercing the corporate veil, there was enough evidence before the judge, presented primarily through Strader's own testimony, to support a finding that Strader dominated and controlled the corporation so completely that the corporation had no mind, will, or existence of its own. Strader never attempted to rebut any such conclusion and Strader never requested findings of fact pursuant to Civ.R. 52. Appellants' third assignment of error is overruled.

■ Under appellants' final assignment they argue that the trial court erred by failing to consider the affirmative defense of payment and satisfaction. Appellants argue that the agreement between the parties originally called for appellants to give appellee a mare "safe in foal" in exchange for the right to pasture horses on Ferguson's land. Appellants also claim that the parties reached a subsequent agreement whereby appellants gave Ferguson two mares and two breeding seasons with two other horses. The trial judge specifically addressed these claims and the evidence before rendering his verdict. Therefore, appellants' argument is not well taken and their final assignment of error is overruled.

The judgment of the trial court is affirmed.

*Judgment affirmed.*

WALSH, J., concurs.

KOEHLER, P.J., dissents.

KOEHLER, Presiding Judge, dissenting.

The trial court, without objections from plaintiff's counsel and without hearing, *sua sponte* denied appellants' right to a jury trial. There is no indication of any prejudice to any of the parties had a jury trial been permitted.

The jury demand was filed April 10, 1992, and was not denied until August 5, 1992 by a visiting judge. Trial was held on August 10, 1992.

In this state, a right to a jury trial is a cardinal principle of our judicial system, a principle which in many respects has been eroded. In this cause, in the absence of prejudice to any party, judicial expediency should yield to appellants' right to have the cause decided by a jury. I believe the denial of appellants' jury demand was an abuse of discretion.