OPINION
Appellant, the city of Mentor, is appealing from a February 16, 2001 judgment entry of the Lake County Court of Common Pleas.
Appellee, Laketran Board of Trustees, is a public entity and has the statutory power to manage and conduct the affairs of Laketran, the regional transit authority for Lake County, Ohio. Pursuant to R.C. 306.31, appellee is considered a political subdivision of this state and exists for the primary purpose of acquiring and operating public transit facilities. As part of its general powers, appellee has the ability under R.C. 306.35(K) to exercise the power of eminent domain.
Consistent with its statutory purpose, appellee operates a number of Park-and-Ride facilities throughout Lake County. These facilities consist of large parking lots, with bus depots. Patrons can park in the lot and ride an express bus to downtown Cleveland.
In 1995, appellee purchased twelve acres of land located near the intersection of State Route 306 and Adkins Road in Mentor, Ohio. Appellee planned to build a Park-and-Ride facility on nine acres of the land. Appellee chose this particular parcel because it was located a short distance from State Route 2, a major four-lane highway that provides Lake County residents with access to Cuyahoga County and Cleveland. Appellee had concluded that the parcel was an ideal location for the Park-and-Ride facility because its buses would have easy access to Route 2 via a large clover-leaf interchange which is located at the intersection of Routes 2 and 306.
Pursuant to the Mentor zoning code, appellee's parcel can be used only for single-family dwellings. However, the ordinance also states that the parcel can be used for certain "public" facilities if a conditional use permit is obtained from the Mentor Planning and Zoning Commission. Appellee's parcel is located near two residential neighborhoods, which have been developed within the past few years. Existing homes are immediately adjacent to the east, west, and north sides of the parcel. Although the land south of the parcel is zoned for commercial use, there are no commercial buildings located on the same side of Route 2 where the parcel is situated.
Prior to acquiring the parcel, appellee's general manager, Frank Polivca ("Polivca"), spoke to certain Mentor officials, including its city manager, about the possibility of building a Park-and-Ride facility at that site. Based upon these conversations, Polivca determined that city officials would not oppose the construction of such a facility. Accordingly, after finalizing the deal for the land, appellee filed an application for a conditional use permit with the Mentor Planning and Zoning Commission ("the Commission").
The Commission conducted five separate hearings on appellee's permit application. During these proceedings, appellee presented unsworn testimony which tended to prove that the parcel in question had certain characteristics which made it the ideal location from which to provide bus services for residents in that area of Lake County. The Commission also determined that the operation of the Park-and-Ride facility would not adversely affect the quality of life in the adjacent residential developments and would not decrease the value of the homes.
Although appellant's officials had previously indicated they would not oppose the plan for the Park-and-Ride facility, appellant presented unsworn testimony during the Commission hearings contradicting the testimony of appellee's witnesses. Appellant's expert witnesses testified that there were other sites which would be adequate for a Park-and-Ride facility and that the air and noise pollution emitted from a Park-and-Ride facility at the Adkins Road site would harm the adjacent residential developments.
After hearing the conflicting evidence, the Commission voted to deny appellee's application for a conditional use permit. Once this decision had been journalized, appellee filed an administrative appeal with the Lake County Common Pleas Court, pursuant to R.C. 2506.01.
In conjunction with the administrative appeal, appellee also brought a declaratory judgment action against appellants, seeking to have the Mentor zoning ordinance found to be unconstitutional as applied to it. As part of its complaint in this action, appellee alleged that, as a distinct political subdivision under R.C. 306.31, it was immune from the enforcement of the zoning ordinance. However, before a hearing could be held, appellee voluntarily dismissed its declaratory judgment action pursuant to Civ.R. 41(A).
Once the record of the Commission proceeding had been filed in the administrative appeal, appellant moved for leave to submit additional evidence to the trial court under R.C. 2506.03(A). The trial court granted the motion and conducted an evidentiary hearing. The court subsequently ruled that appellee had been entitled to the issuance of a conditional use permit.
Appellant appealed the decision. In Laketran Bd. of Trustees v. Mentor
(Oct. 29, 1999), 11th Dist. Nos. 98-L-083, 98-L-088, 1999 WL 1073665, at 6-7 (Laketran I), this court held that the zoning board was not the proper body to determine whether appellee was immune from the Mentor zoning code; therefore, the administrative appeal to the common pleas court was improper. We remanded the matter for the trial court to vacate its judgment and issue a new judgment dismissing the administrative appeal.
Appellee then filed a complaint for declaratory judgment on January 10, 2000. In its complaint, appellee sought a judgment determining that it was immune from Mentor's zoning regulations.
On February 9, 2000, appellant filed a motion for recusal, alleging that the trial judge had personal knowledge of disputed facts in this case. The trial court denied appellant's motion on March 8, 2000. Appellant filed a motion for summary judgment on May 16, 2000, alleging that appellee's claims were barred by res judicata. The trial court overruled appellant's motion in a July 13, 2000 judgment entry. On August 3, 2000, appellant filed a motion for jury trial. The trial court overruled this motion on August 24, 2000.
A bench trial was conducted on November 30, 2001. The parties stipulated that all of the testimony and exhibits accepted into evidence in the prior litigation would be part of the record in the new proceedings.
In a February 16, 2001 judgment entry, the trial court found that appellee was immune from Mentor's zoning regulations. On February 22, 2001, appellant filed its notice of appeal. Then, on July 11, 2001, appellant filed a motion for relief from judgment. On October 4, 2001, the trial court, having had the matter remanded to it by this court, denied appellant's motion for relief from judgment.
Appellant filed a timely appeal of the February 16, 2001 judgment entry and makes the following assignments of error:
 "[1.] The trial court erred to the prejudice of [a]ppellant in overruling appellant's motion for summary judgment.
 "[2.] The trial court erred to the prejudice of [a]ppellant by overruling [a]ppellant's motion to recuse.
 "[3.] The trial court erred to the prejudice of [a]ppellant by overruling [a]ppellant's motion for a trial by jury.
 "[4.] The trial court erred to the prejudice of [a]ppellant in determining that [a]ppellee is immune from the zoning ordinances of the [c]ity of Mentor.
 "[5.] The trial court erred to the prejudice of [a]ppellant by refusing to allow qualified witnesses to offer expert opinions.
 "[6.] The decision of the trial court was against the manifest weight of the evidence.
In its first assignment of error, appellant argues that the trial court erred in failing to grant appellant's motion for summary judgment, which was premised on the theory that the current action is barred by res judicata. The application of the doctrine of res judicata bars any claim arising out of a transaction or occurrence that was the subject matter of a previous action in which a valid, final judgment was rendered upon the merits. Kelm v. Kelm, 92 Ohio St.3d 223, 227, 2001-Ohio-168.
In Laketran I, supra at 7, this court remanded the matter to the trial court to dismiss appellee's administrative appeal. Our decision was premised on the logic that a zoning board was not the appropriate judicial body to determine whether an entity was a political subdivision immune from zoning ordinances. Id. at 5. Therefore, the use of an administrative appeal was improper. Id. at 6. In reaching this conclusion, we did not render judgment upon the merits of appellee's case; instead, we remanded the matter because of procedural issues. Because we instructed the trial court to dismiss the administrative appeal for procedural reasons, appellee's subsequent action was not barred by res judicata. This is analogous to a situation where the trial court has been deprived of subject matter jurisdiction. Under those circumstances, the plaintiff may refile the same action because there has not been a dismissal on the merits. C.V. Perry Co. v. W. Jefferson (1996), 110 Ohio App.3d 23, 27; see, also, Ohio Patrolmen's Benevolent Assn. v. MetroHealth Sys. (1993),87 Ohio App.3d 16, 22 (an involuntary dismissal for lack of subject matter jurisdiction is without prejudice). Further, we stated in LaketranI, supra at 6, that "the trial court shall dismiss the appeal on the ground that the use of the procedure for an administrative appeal was improper[.] * * * Appellee will then be free to bring a declaratory judgment action concerning the immunity issue." Id. Clearly, we did not contemplate that the dismissal of the administrative appeal would serve as a res judicata bar to the bringing of a declaratory judgment action.
As for appellee's voluntary dismissal of its declaratory judgment action, pursuant to Civ.R. 41(A), the commentary to the rule states that "a plaintiff may voluntarily and without an order of court dismiss his case without prejudice by filing a notice of dismissal at any time before the commencement of trial." Such a voluntary dismissal is not a bar subsequent litigation. Hadad v. Croucher (N.D.Ohio. 1997),970 F. Supp. 1227, 1237. For the foregoing reasons, we conclude that appellant's first assignment of error lacks merit.
In its second assignment of error, appellant suggests that the trial judge should have recused himself from the matter sub judice because he had personal knowledge of disputed evidentiary facts from presiding overLaketran I. However, "[a] judge need not recuse himself simply because he acquired knowledge of the facts during a prior proceeding." State. v.D'Ambrosio, 67 Ohio St.3d 185, 188, 1993-Ohio-170. Evidence presented in a previous trial does not create a personal bias because it does not derive from an extrajudicial source. Id.
Here, appellant does not suggest that the trial court's alleged personal bias stemmed from any source other than the prior proceedings in his courtroom. The mere fact that the trial judge has been exposed to the evidence and issues in a case does not create a personal bias that would require his recusal. Further, appellant filed an affidavit of disqualification with the Supreme Court of Ohio, seeking the trial judge's disqualification from this case. In re Disqualification ofMitrovich, 91 Ohio St.3d 1206, 2000-Ohio-200. In denying the affidavit, the Supreme Court noted that appellant offered no evidence to show that the trial judge was biased or that he would not obey the remand order from this court. Id. at 1207. Appellant has not cited any new incidents or implications of bias on the part of the trial judge since that ruling. In view of the foregoing, appellant's second assignment of error is not well taken.
In its third assignment of error, appellant argues that the trial court should have granted its motion for a jury trial. Because appellant failed to comply with Civ.R. 38, it filed its motion for a jury trial pursuant to Civ.R. 39, which states that "notwithstanding the failure of a party to demand a jury in an action in which such a demand might have been made of right, the court in its discretion upon motion may order a trial by a jury of any or all issues." (Emphasis added.)
In Ferguson v. Strader (1994), 94 Ohio App.3d 622, 626, the appellants moved for a jury trial when the case was assigned to a visiting judge. However, they did not file their motion until six weeks after the assignment was made, and almost eighteen months after the last responsive pleading. Id. The appellants also failed to submit a memorandum supporting their late jury demand. Id. The Twelfth Appellate District held that under those circumstances, the trial court did not abuse its discretion in denying the appellant's motion. Id.
In the case sub judice, appellant failed to attach a memorandum supporting their motion for a jury trial. On appeal, however, appellant suggests that the motion was filed because the trial judge had not recused himself. The trial court denied appellant's motion for recusal on March 8, 2000, but appellant did not file its motion for a jury trial until August 3, 2000, almost five months after the motion for recusal was denied and only three weeks before the trial was originally scheduled to commence on August 25, 2000. Appellant has never offered any explanation for the delay in filing its jury demand. Given these facts, we conclude that the trial court did not abuse its discretion in denying appellant's motion for a jury trial and that appellant's third assignment of error lacks merit.
Appellant asserts, in its fourth assignment of error, that the trial court erred in finding that appellee was immune from appellant's zoning ordinances. In Brownfield v. State (1980), 63 Ohio St.2d 282, 284, the Supreme Court of Ohio rejected the proposition that a privately-operated, state-owned facility is automatically exempt from municipal zoning restrictions. If such a facility is to be exempt from local zoning restrictions, the land-owning authority must first make a reasonable attempt to comply with those restrictions. Id. at 286. If the land-owning authority has attempted to comply with local zoning regulations, but those regulations significantly hinder the public purpose underlying the acquisition of the property by such compliance, then the trial court should consider three factors: (1) essential nature of the proposed facility; (2) effect that the proposed facility would have on adjacent property; and (3) availability of alternative locations. Id. at 286-287.
Therefore, the first issue before us is whether appellee made a reasonable attempt to comply with appellant's zoning restrictions. At trial, appellee had to show that it "made every reasonable effort to comply with the existing local land-use restrictions or that it [was] impossible both to comply with local zoning use restrictions and use the property for the essential state governmental use contemplated." Taylorv. State of Ohio, Dept. of Rehab. and Correction (1988),43 Ohio App.3d 205, 209.
Here, the trial court found that appellee considered six possible sites before choosing the Adkins Road site. Although the site was zoned residential, the construction of a public facility was possible if appellee obtained a conditional use permit. Appellee purchased the site only after discussing the project with appellant's officials, who did not voice any opposition to the project. The trial court concluded from the evidence before it that appellant informally approved the Adkins Road site. Polivca testified that appellee held numerous formal meetings with appellant's officials with respect to the siting of the Park-and-Ride facility, and that appellant's officials never suggested that the Adkins Road site was inappropriate. He also testified that appellant's officials informed him that a conditional use permit could be obtained from the planning commission. He further testified that appellee purchased parcels of property owned by Richard Osborne at the request of appellant's director of community development, Ron Traub ("Traub"). Polivca testified that appellee purchased those parcels for the Adkins Road site solely to serve the purposes of appellant and that the parcels were otherwise of no value to appellee.
John Konrad ("Konrad"), appellant's city engineer, testified, on cross-examination, that he was present at some of the meetings between appellant's and appellee's representatives at which the Adkins Road facility was discussed, and that appellant's officials raised no objections to the facility at those sessions. He also testified that he was not aware of any effort on the part of appellant's officials to discourage appellee from purchasing the Adkins Road site.
John Pflum ("Pflum") was the owner of Pflum, Klausmeier Gehrun, a civil engineering firm, which was engaged by appellee to define and analyze the impact a Park-and-Ride facility at the Adkins road site would have on the surrounding community. He testified that his firm reviewed a total of 15 alternative Park-and-Ride sites and that they would not have adequately served the designated population center.
James R. Pegoraro ("Pegoraro"), a professional surveyor and the president of Land Design Consultants, testified that he was familiar with the Mentor zoning code and had reviewed the supplemental regulations to the zoning code. Pegoraro also testified that appellee attempted to comply with Section 150.204 of the zoning code, "Screening Required in Residential Zones," by planning to construct six-foot tall earthen mounds, which would be landscaped with trees and shrubs to screen the parking facility from the neighboring residential area. He further testified that whereas the proposed plan for the Adkins Road site placed the parking facilities 90 feet from the property line, the zoning regulations required that the parking facility be only 60 feet from the property line. Finally, he testified that the appellee's board instructed him to comply with all aspects of the Mentor zoning code.
Appellant suggests that the Park-and-Ride facility could have been located in a commercial or industrial district. However, it is clear from the testimony at trial that locating the facility in a residential neighborhood is a significant factor in determining its future success. Polivca testified that "locating Park-and-Rides close to or adjacent to residential areas is a very beneficial location [sic] because people can access the Park-and-Ride without starting [their] cars. Pedestrian access is one of the other criteria * * * can people walk to the sites * * * that is one of the issues and criteria."
Appellant would have this court believe that appellee rode roughshod over Mentor's zoning regulations in locating the Park-and-Ride in a residential neighborhood. Appellant fails, however, to cite any testimony that contradicts Polivca's assertion that appellant's officials indicated that it would be possible for appellee to obtain a conditional use permit from the planning commission.
In view of the foregoing, we conclude that the record supports the trial court's finding that appellee made a discernibly reasonable effort to comply with Mentor's land-use restrictions. Therefore, we must now consider the second part of the Brownfield test, which requires this court to examine (1) the essential nature of the government-owned facility, (2) the impact of the facility on surrounding property, and (3) alternative locations available for the facility. Brownfield,63 Ohio St.2d at 286-287.
Appellant asserts in its brief that appellee does not provide an essential service comparable to a police force, fire department, hospital, sewer system, or water treatment plant. However, appellant has misconstrued Brownfield. Brownfield states that the trial court must address the "essential nature of the government-owned facility, the impact of the facility upon surrounding property, and the alternative locations available for the facility." (Emphasis added.) Id. at 286. If one substitutes "Laketran" for the word "facility" in the foregoing quotation, it would be nonsensical. However, if one substitutes "parking lot" for the word "facility," the phrase is logical and coherent. Clearly, the issue is not whether appellee, as a political subdivision, provides an indispensable service to Lake County and the city of Mentor, but whether the construction of the Adkins Road Park-and-Ride is essential for appellee to successfully fulfill its mission.
Polivca testified that appellee currently has four Park-and-Ride facilities in Lake County, one of which is scheduled to be replaced by the proposed Adkins Road Park-and-Ride. To adequately serve Lake County, appellee needs to develop approximately thirteen such facilities. He also testified that a Park-and-Ride facility in the city of Wickliffe was "filled up in six weeks."
Polivca's testimony, which was not contradicted by appellant, suggests that a vast expansion in the number of Park-and-Ride facilities in Lake County is necessary if appellee is to successfully fulfill its mission, and that the Adkins Road Park-and-Ride is an essential initial step in that process. Additionally, Pflum's testimony that alternative Park-and-Ride sites would not have adequately served appellee's target market supports the conclusion that the proposed Adkins Road Park-and-Ride is an essential facility in terms of appellee fulfilling its mission in Lake County.
The next issue is the impact of the Park-and-Ride on the surrounding property. As was noted earlier, appellee has proposed a design for the facility that, in some respects, exceeds the requirements of the Mentor zoning code.
Pflum testified that the following roadway improvements had been proposed for the site: the widening of Adkins Road to allow for a left-turn lane and improved turning radiuses; the installation of a sidewalk on Adkins Road to permit smooth pedestrian flow; and, a new controller to be installed on the stoplight at the intersection of Adkins Road and Reynolds. He further testified that the roadway improvements would enhance the safety and flow of traffic.
Pflum also testified as to the effect the Park-and-Ride would have on the safety of the neighborhood. He stated that when properly designed and staffed, Park-and-Ride sites were as safe as retail shopping centers and would not have a negative impact on the adjacent neighborhood.
As for air quality and noise impact, Pflum testified that the Park-and-Ride site would have a positive effect on air quality and that standards for permissible noise levels could be met by the construction of the aforementioned earthen berms.
Jefferson Sherman, a member of the Appraisal Institute, conducted a study of the Triskett bus garage in Cleveland, which contains 580 parking spaces for cars, and its effect on housing prices in the adjoining neighborhood. He chose the Triskett bus garage because of its similarity to the proposed Park-and-Ride facility. His study demonstrated that a home's proximity to the bus garage had no influence on the value of that home.
Appellant cites no testimony that supports its assertion that the proposed Park-and-Ride facility would have a deleterious effect on the surrounding neighborhood. One of appellant's witnesses at trial, Roger D. Ritley, president of Charles M. Ritley Association, a real estate appraisal firm, testified on cross-examination that he knew of no study conducted in the United States that had demonstrated that the presence of a Park-and-Ride facility had depressed residential property values.
In view of the foregoing, we reiterate that the record supports the trial court's analysis of this issue and its conclusion that appellant failed to demonstrate that the proposed Park-and-Ride would have a negative effect on the adjacent neighborhood.
Finally, we must consider whether an alternative location was available for the Park-and-Ride. As we previously noted, Pflum testified that he reviewed a total of 15 alternative sites and that they were inadequate for the intended purposes of the proposed facility. Polivca testified that American State Highway Transportation Officials have published a document on how to select a site for a Park-and-Ride facility, as did the Transportation Research Board and the Federal Highway Administration. His testimony also indicated that appellee followed the criteria set forth by these organizations in selecting the Adkins Road site.
Keith Rosbury ("Rosbury"), a senior vice-president of HNTB Corporation, a firm which engages in road and bridge planning design, testified on cross-examination that when viewed solely in terms of its function as a transit facility, the Adkins Road site was comparable or superior to other available sites.
While other sites were available for the Park-and-Ride facility, appellant has failed to demonstrate that they were superior to the Adkins Road site. Further, even if other available sites were comparable to the Adkins Road site, the availability of other locations is only one aspect of the Brownfield test and must be weighed against the other two factors suggested by that court. Here, regardless of the availability of other possible sites for the Park-and-Ride facility, the essential nature of the proposed facility and the minimal impact that such a facility would have on the surrounding property, when considered in conjunction with appellee's efforts to involve appellant's officials in the early stages of planning the facility, support the conclusion that appellee should be immune from appellant's zoning laws for the purpose of the construction of the facility. Therefore, appellant's fourth assignment of error lacks merit.
Appellant posits, in its fifth assignment of error, that the trial court improperly excluded expert testimony concerning the effect that the proposed Park-and-Ride would have on the character of the adjacent residential neighborhood. To testify as an expert, a witness must meet three requirements: (1) his testimony must relate to matters beyond the knowledge or experience possessed by laypersons; (2) he must be qualified as an expert by specialized knowledge regarding the subject matter of the testimony; and, (3) his testimony must be based on reliable scientific, technical, or other specialized information. Evid.R. 702. The trial court's determination as to whether an individual qualifies as an expert will be overturned only if the court abused its discretion. State v.Baston, 85 Ohio St.3d 418, 423, 1999-Ohio-280.
The witnesses from whom appellant wished to procure expert testimony but was prevented from doing so by the trial court were: Rosbury; Konrad; Julian Suso ("Suso"), appellee's city manager; and, Traub. With respect to Konrad, Suso, and Traub, appellant has utterly failed to demonstrate that any of these individuals met the third prong of Evid.R. 702, which requires an expert's testimony be "based on reliable scientific, technical, or other specialized information." Evid.R. 702(C). While all three individuals are well educated and have substantial experience in their respective fields, there is no suggestion either in the trial transcripts or in appellant's brief that any of the three individuals had access to or had reviewed specialized information on the subject of Park-and-Ride facilities and their affect on surrounding residential neighborhoods. Appellant failed to lay a foundation that would suggest that these individuals could provide expert testimony on the subject of locating Park-and-Ride facilities.
For example, the following exchange occurred during the direct testimony of Traub:
 "Q. Tell us what you've done to familiarize yourself and what your background is to make an opinion relative to the impact that a Park-and-Ride of this type would have in this type of specific residential neighborhood.
 "A. Sir, my comments can be specific to that facility, I serve as staff to the municipal Planning Commission and have had access to documents submitted by both sides including the Pflum impact study as well as had an opportunity to hear firsthand comments from residents and
"The Court: That wasn't the question, sir.
"The Witness: I'm sorry.
 "THE COURT: The question was did you make a study as to the impact on this area, not whether you read other people's reports and things submitted by other people, the question is whether you made an impact study.
 "THE WITNESS: I apologize, Your Honor, no, I specifically did not make a study.
 "Q. Did you make inquiry though into this matter and do you have an opinion as to what, if any, impact would be made by putting this type of use into an existing residential neighborhood?
"MR. WALLACH: Objection.
"THE COURT: Again he may answer yes or no.
"A. Yes.
"Q. Tell us what that opinion is.
"MR. WALLACH: Objection.
"Q. Tell us what you did first.
 "A. Sir, as a result of again attending the hearings before the municipal Planning Commission and reviewing documents submitted by both sides as well as hearing testimony from residents in the immediate area I was able to form an opinion relative to the potential impact of the site and to varying degrees, yes, there is an impact each
"MR. WALLACH: Objection.
"THE COURT: Sustained.
 "Q. Will, in your opinion, a negative impact occur if you insert a bus parking lot in this location?
"MR. WALLACH: Objection.
"THE COURT: Sustained."
From this excerpt, it is evident that the court determined that Traub did not qualify as an expert because his testimony did not comply with Evid.R. 702(C), which requires that expert testimony be "based on reliable, scientific, technical, or other specialized information." Here, Traub's "expertise" on the subject of the impact of Park-and-Ride facilities on residential neighborhoods was derived solely from having attended hearings of the local planning commission. Konrad and Suso were similarly unqualified to provide expert testimony on this topic. Therefore, the trial court did not abuse its discretion in refusing to admit their testimony on the issue of how the proposed Park-and-Ride facility would affect the adjacent residential neighborhood.
With respect to Rosbury, he had testified at the first trial, and the trial court concluded that his testimony at the second trial would be redundant. Evid.R. 403(B) provides that it is within a trial court's discretion to exclude relevant evidence if it is probative value is outweighed by the needless presentation of cumulative evidence. Here, Rosbury's testimony at the original trial was already part of the record, and appellant has failed to identify for this court the portion of his excluded testimony, which appellant proffered at the second trial, that was not cumulative in nature. Therefore, we cannot conclude that the trial court abused its discretion in excluding Rosbury's additional testimony. For the foregoing reasons, appellant's fifth assignment of error is not well taken.
Appellant makes two arguments in his sixth assignment of error: (1) the trial court's decision was against the manifest weight of the evidence; (2) the cumulative effect of the trial court's errors deprived appellant of a fair trial.
Appellant has failed to support his manifest weight argument with any citations to the record. App.R. 16(A)(7) mandates that the brief of appellant include "[a]n argument containing the contentions of the appellant with respect to each assignment of error presented for review and the reasons in support of the contentions, with citations to the authorities, statutes, and parts of the record on which appellant relies." See Trickett v. Krugliak, Wilkins, Griffiths Dougherty Co.,L.P.A. (Oct. 26, 2001), 11th Dist. No. 2000-P-0105, 2001 WL 1301557, at 4. Appellant's manifest weight argument consists of a bland assertion utterly unsupported by any facts or law. Further, this court, having reviewed the trial transcripts for purposes of addressing appellant's fourth assignment of error, finds nothing in the record to support appellant's contention.
We would note, in connection with appellant's argument as to cumulative error, that appellant has not any error on the part of the trial court, much less a series of errors that would support a reversal on the basis of cumulative error. Therefore, appellant's sixth assignment of error is overruled.
For the foregoing reasons, the judgment of the Lake County Court of Common Pleas is hereby affirmed.
WILLIAM M. O'NEILL, P.J., JUDITH A. CHRISTLEY, J., concur.