**VENTURE PROPERTIES OF BOARDMAN, INC. et al., Appellants,**

v.

**BOARDMAN STEEL, INC., Appellee.**

[Cite as *Venture Properties of Boardman, Inc. v. Boardman Steel, Inc.*, 177 Ohio App.3d 572, 2008-Ohio-3088.]

Court of Appeals of Ohio,
Seventh District, Mahoning County.

No. 07 MA 149.

Decided June 17, 2008.

Dale Bricker, for appellants.

Robert Palma, for appellee.

Vukovich, Judge.

{¶ 1} Plaintiffs-appellants Venture Properties of Boardman, Inc. ("VPB") and Railroad Ventures, Inc. ("RVI") appeal the decision of Mahoning County Court No. 5, which essentially dismissed its forcible-entry-and-detainer action in favor of defendant-appellee Boardman Steel, Inc. The main issue presented on appeal is whether appellants have a possessory interest in the land subject to the four licenses in which Boardman Steel is the licensee and thus whether they have standing to proceed as plaintiffs in this action. However, such issue cannot be reached without the presence of the party alleged by Boardman Steel to have a prevailing interest in the land underlying the licenses. Consequently, the judgment of the trial court is reversed, and this case is remanded for joinder of the Columbiana County Port Authority ("CCPA").

STATEMENT OF THE CASE

{¶ 2} In 1975, Youngstown & Southern Railway Company granted to Boardman Steel a license to have constructed and to use a private grade crossing over its railroad in order to reach Southern Boulevard from Boardman Steel's building located on the east side of the tracks. As licensee, Boardman Steel was required to pay a base annual rent of $100 due by July 1 of each year and an additional sum due by July 15 of each year calculable by a formula that utilized a price index published by the Bureau of Labor Statistics. Boardman Steel was also required to obtain liability insurance in certain listed amounts and to provide a copy of the policy to the licensor with a certificate of endorsement that the insurer would notify said licensor ten days before cancellation. The license provided that it was not perpetual, that it was for the sole convenience of Boardman Steel, and that it shall continue only as long as Boardman Steel uses the crossing, provided that Boardman Steel complies with all the terms, conditions, and covenants of the license.

{¶ 3} Y & S Railway also granted to Boardman Steel licenses to construct and use gas, water, and sewer lines that would run under the tracks at the crossing. Boardman Steel had to pay $25 per year for each of the three lines. These licenses were revocable by the licensor with 60 days notice to Boardman Steel. The licenses also specified that if after termination, Boardman Steel failed to remove its property from the land, it would be considered a trespasser, and the licensor would remove the property at the expense of Boardman Steel.

{¶ 4} In 1996, Y & S Railway transferred the railroad realty and all its attendant rights therein to RVI. On October 14, 1997, RVI sent notice to Boardman Steel terminating the grade-crossing license for failure to pay annual rent in accordance with the terms of the license. RVI also sent notices terminating the gas, sewer, and water line licenses. Boardman Steel did not vacate the land and has continued using the licenses without paying rent and/or licensing fees, notwithstanding its further receipt of rent invoices in 1998 and 1999.

{¶ 5} In 1998, RVI initiated an action before the Surface Transportation Board ("STB") in order to abandon the railroad line. The Columbiana County Port Authority ("CCPA") intervened with an offer to purchase the line, and the STB agreed that RVI would sell the line to CCPA. In October 1999, prior to its sale of the line to CCPA, RVI assigned to its affiliate VPB all its right, title and interest in listed third-party agreements which burdened the railroad line realty.

{¶ 6} CCPA sought to have RVI's transfer of its rights under the licensing agreements rejected. However, the STB denied CCPA's request and allowed RVI and VPB to retain their rights under 156 of the licensing agreements

(including the four Boardman Steel licenses) because CCPA was aware of these transfers prior to the sale. The STB then reduced CCPA's purchase price by the appraised value of the licenses. *Railroad Ventures, Inc.* (Jan. 7, 2000), STB Docket No. AB 556 (Sub. No. 2X), 2000 WL 1125904, affirmed in *Railroad Ventures, Inc. v. STB* (C.A.6, 2002), 299 F.3d 523. The 2001 deed of the railroad realty to CCPA specifically stated that it was subject to the decisions of the STB in the aforementioned docket number.

{¶ 7} CCPA then requested reconsideration or clarification of the extent of the licenses transferred. Specifically, VPB had converted a license with a 25-year term (renewable for 25 years) into a permanent easement in exchange for $25,000 from the licensee. CCPA argued that, under the STB's prior decisions, RVI and/or VPB are only permitted to retain the income from the existing licenses and that only CCPA, as the fee owner of the real estate under the line, has the ability to enter new agreements extending the burden on the land.

{¶ 8} The STB determined that renewal of the 156 licensing agreements or conversion of term-limited licenses to permanent easements is permissible as long as the grantee's rights are not expanded in a manner that would interfere with the railway operations. The STB noted that CCPA had already complained about RVI's pre-sale conversion of such a license to a permanent easement. The STB stated that it is evident that its prior decision did not expect the licenses to become CCPA's property at the end of their terms, citing the fact that when it credited CCPA with the value of the licenses retained by RVI, the STB did not differentiate between those that had been converted into permanent easements and those that had not. The STB stated that RVI and/or VPB have "an ownership interest" in the 156 licenses and that CCPA never received an interest in these licenses. The STB pointed out that although the circuit court reviewing the STB's first decision ordered RVI to transfer a fee-simple interest in the line, the court specifically excluded the 156 licenses from that transfer because these property interests were not conveyed to CCPA. *Railroad Ventures, Inc.* (Dec. 15, 2005), STB Docket No. AB 556 (Sub. No. 2X) 13–15, 2005 WL 3437630.

{¶ 9} As a result, VPB sent a 2006 invoice to Boardman Steel for past rent. On July 7, 2006, VPB sent a notice requesting Boardman Steel to leave the premises of the grade crossing. On July 14, 2006, VPB and RVI (collectively, "plaintiffs," whose individual rights are not distinguished at this time) filed a forcible-entry-and-detainer action against Boardman Steel seeking restitution of the grade crossing. On August 30, 2006, plaintiffs amended their complaint to have Boardman Steel remove and cease use of the gas, water, and sewer line licenses. They attached the four licenses, the various termination notices and the instrument assigning the licenses from RVI to VPB.

{¶ 10} On September 15, 2006, Boardman Steel filed a Civ.R. 12(B) motion to dismiss based upon failure to state a claim, failure to join a necessary party, and statute of limitations. First, Boardman Steel pointed to the 1999 assignment contract between RVI and VPB. Although it mostly refers to the licenses as "Third Party Agreements," at one point it refers to them as "Third Party Agreements *now or hereafter in effect*" (with emphasis added by Boardman Steel). Boardman Steel believes that this latter wording would not encompass the Boardman Steel licenses because those licenses had been terminated by RVI in October 1997. Boardman Steel concluded that since RVI terminated the licenses, RVI attempted to assign to VPB that which it no longer had. Boardman Steel continued by urging that CCPA is the fee owner of the railroad and that neither plaintiff has an ownership interest in the land. Thus, Boardman Steel argued that plaintiffs do not fit the definition of a landlord in the forcible-entry-and-detainer statute and as such they lack standing.

{¶ 11} Boardman Steel then characterized itself as a trespasser but stated that the statute of limitations for trespassing was four years from the October 14, 1997 termination date. In anticipation of any continuing-trespass argument, they reiterated that plaintiffs lost standing when the railroad land was transferred to CCPA in 2001. Boardman Steel then alleged that CCPA as the fee-simple owner was a necessary party, noting that there were still matters pending between CCPA and plaintiffs before the Sixth Circuit Court of Appeals in the appeal from the December 2005 STB decision.

{¶ 12} Plaintiffs responded by urging that CCPA has been found to have no interest in the 156 license agreements and that RVI and VPB retained rights in those licenses. Plaintiffs stated that there is no support for the argument that the licensor loses his interest in the license and his contractual right to assign it once he attempts to terminate the license due to a defaulting licensee, who then refuses to accept termination but continues to default in rent payment. They characterized Boardman Steel as a holdover licensee subject to forcible entry and detainer.

{¶ 13} Boardman Steel replied by pointing out that the language of the three utility-line licenses specifies that the licensee shall be considered a trespasser after the license is revoked. They specified that although it may be true that the termination of a license does not extinguish rights of the licensor, once the license was terminated, there was nothing to transfer to VPB, and once CCPA bought the property itself, CCPA became the only entity with the right to eject Boardman Steel. Similarly, it was urged that the forcible-entry-and-detainer section pointed to by plaintiffs was inapplicable because plaintiffs do not have a right to possession as required by R.C. 1923.02(A)(5).

{¶ 14} On March 1, 2007, the county court magistrate released a decision. Although the magistrate acknowledged a bifurcation of the 156 licenses from the underlying realty and acknowledged that the STB found that CCPA never obtained an interest in the 156 licenses or in the rights of renewal, the magistrate still concluded that plaintiffs had no right to possession or an interest in the land but a mere interest in the licenses. The magistrate ruled that these licenses were only in effect through October 1997, when RVI gave notice of termination to Boardman Steel, at which point the license ceased to exist for any purpose such as assignment of the licensor's rights. The magistrate thus decided that the action is clearly not one for forcible entry and detainer because R.C. 1923.02(A)(5) requires an occupier of lands without color of title and a complainant with a right to possession of the land. Besides determining that plaintiffs had no right to possession, the magistrate also ventured that Boardman Steel was not the occupier of lands without color of title because the licenses were never converted to easements.

{¶ 15} Rather than rely on Boardman Steel's trespass statute-of-limitations argument, the magistrate concluded that the 15–year statute of limitations for breach-of-contract actions had not yet run. However, the magistrate limited any contractual rights to those damages incurred as of the 1997 license termination. Based upon the above findings, the magistrate found that joinder of CCPA was unnecessary.

{¶ 16} The magistrate then outlined various conclusions. For instance, the magistrate purported to overrule the motion to dismiss for failure to state a claim. In doing so, the magistrate held that the facts of the complaint could arguably raise a breach-of-contract claim and that there may exist an action for breach of the license agreements. Thus, the magistrate granted plaintiffs 30 days to amend the complaint consistent with its decision.

{¶ 17} Plaintiffs filed timely objections to the magistrate's decision. They agreed with some of the magistrate's conclusions, such as the bare refusal to dismiss the complaint. However, they objected to the following conclusions: that their only possible claim is for breach-of-contract damages at the time of the license termination; that the action cannot proceed in forcible entry and detainer; that Boardman Steel is not an occupier of land without color of title; and that plaintiffs have no right to possession.

{¶ 18} Plaintiffs pointed out that the STB's December 2005 decision found that the licenses could be converted to easements without the permission of CCPA and urged that this would not be possible unless the party with rights as the licensor had an interest in the land. In order to be the licensor in the licensing agreement and in order to renew the licenses or turn them into permanent easements, they contend that they must have either an easement over the land

subject to the licenses or a fee simple interest as specifically excluded from the CCPA transfer; either option would give them a possessory interest for purposes of the forcible entry and detainer statute. Plaintiffs also stated that the STB has exclusive jurisdiction over railroad rights-of-way and preempts state property law. They noted that although the licenses were terminated in 1997, Boardman Steel continued to occupy the land and that if the magistrate's decision is correct, then the licensor has no remedy to enforce the license.

{¶ 19} Boardman Steel responded by speculating that the STB was never informed that the licenses had been terminated in 1997 and that STB only gave RVI and VPB the right to retain those licenses still actually in place at the time of the CCPA transfer. They also objected to the statute-of-limitations decision regarding their trespassing argument.

{¶ 20} Plaintiffs replied that Boardman Steel's continued occupation after termination made them a holdover licensee or a continued licensee by implication for purposes of the licensor's rights. They noted that a continuing trespass is not subject to the statute of limitations in order to receive eviction. They also attempted to have the license renamed a lease for easier compliance with the forcible-entry-and-detainer statute.

{¶ 21} On March 3, 2007, the trial court issued a judgment entry merely stating that the court adopted the magistrate's decision. Because a mere adoption of a magistrate's decision is not a proper entry of judgment for purposes of appealing, plaintiffs asked for an amended judgment wherein the court would independently set forth its judgment. On June 27, 2007, the trial court added to its decision by copying and pasting the magistrate's final conclusions into its entry. On July 23, 2007, plaintiffs (hereinafter "appellants" collectively) filed timely notice of appeal.

## FINAL APPEALABLE ORDER

{¶ 22} The first issue that must be discussed is whether the trial court's June 27, 2007 judgment entry is a final, appealable order. Although it now sufficiently constitutes a judgment, Boardman Steel argues that the court's decision is not final and appealable. Boardman Steel contends that it was the one who lost its motion below and that appellants were given the opportunity to restate their complaint in order to more artfully state a cause of action for breach of contract. Boardman Steel concludes that appellants still had a claim pending after the trial court's decision, just not the one they wanted to assert.

{¶ 23} Appellants respond that the trial court's decision essentially dismissed their only pending claim and provided them with the opportunity to amend in order to state a different and very limited claim that they did not wish to assert. Thus, they urge that the decision affected a substantial right in an action that in

effect determined the action and prevented a judgment. Appellants' arguments are correct.

{¶ 24} An order is a final order that may be reviewed when it is an order that affects a substantial right in an action that in effect determines the action and prevents a judgment. R.C. 2505.02(B)(1). A substantial right is a right that the Constitution, a statute, the common law, or a rule of procedure entitles a person to enforce or protect. R.C. 2505.02(A)(1). Forcible entry and detainer is a right provided by statute. See R.C. 1923.01(A); 1923.02(A).

{¶ 25} Whether appellants are in fact entitled to use forcible entry and detainer under the facts of this case is the issue on the merits, not the issue for determining whether the trial court's decision is final and appealable. The court's order here adopted a magistrate's decision, which found that appellants were not permitted to proceed in forcible entry and detainer. Thus, a substantial right was affected by the order.

{¶ 26} Likewise, this order in effect determined the action and prevented a judgment therein. Although the decision purported to deny Boardman Steel's motion to dismiss, it in fact dismissed the forcible-entry-and-detainer action, which was the only action brought in the complaint and argued in the opposition to dismissal. The court may have allowed 30 days to amend in case appellants wished to bring a certain breach-of-contract action. However, appellants cannot be forced to so amend when they desire only to bring a summary forcible-entry-and-detainer cause of action before the county court at this time.

{¶ 27} Moreover, the court's judgment adopting the magistrate's decision did not merely allow amendment for reformation to a contract action, it limited any such contract action to only those damages incurred as of the 1997 termination notice provided by RVI. The court's decision found that appellants had no possessory interest in the land subject to the terminated license, granted property rights to CCPA, a nonparty, and deprived appellants of property rights asserted in the forcible-entry-and-detainer action.

{¶ 28} As for any suggestion by Boardman Steel that the order is not final due to the lack of Civ.R. 54(B) language, that rule is inapplicable here. Civ.R. 54(B) provides:

{¶ 29} "When more than one claim for relief is presented in an action whether as a claim, counterclaim, cross-claim, or third-party claim, and whether arising out of the same or separate transactions, or when multiple parties are involved, the court may enter final judgment as to one or more but fewer than all of the claims or parties only upon an express determination that there is no just reason for delay. In the absence of a determination that there is no just reason for delay, any order or other form of decision, however designated, which adjudicates

fewer than all the claims or the rights and liabilities of fewer than all the parties, shall not terminate the action as to any of the claims or parties, and the order or other form of decision is subject to revision at any time before the entry of judgment adjudicating all the claims and the rights and liabilities of all the parties."

{¶ 30} Here, RVI and VPB presented a forcible-entry-and-detainer claim for relief against Boardman Steel regarding four licenses, and the court specifically disallowed that claim filed by RVI and VPB to proceed against Boardman Steel regarding all four licenses. The court did not enter final judgment as to one or more but fewer than all of the claims or parties. Merely because the court allowed time to amend in case appellants wished to assert limited contractual rights (those existing before the 1997 termination) does not mean that the court entered judgment as to one or more but fewer than all of the claims. *All claims asserted were disposed of by the court's order.* This was alleged to be a forcible-entry-and-detainer action and nothing else. The mere fact that the court decided to throw an amendment option out to appellants did not make Civ.R. 54(B) language necessary.

{¶ 31} In conclusion, the trial court's decision affected the substantial right of proceeding in forcible entry and detainer in order to obtain one's possessory interest in land, and the decision determined the forcible entry and detainer action and prevented a judgment in forcible entry and detainer. As such, it is a final, appealable order.

## ASSIGNMENT OF ERROR NO. ONE

{¶ 32} In the first assignment of error, appellants complain that the trial court erred in changing their complaint from a forcible-entry-and-detainer action into a breach-of-contract action or in allowing amendment for such a change. Besides urging that this action by the court resulted in a final, appealable order, appellants also urge that the magistrate made findings (adopted by the trial court) that were never raised by Boardman Steel in its dismissal motion, such as that appellants had no right to possession; that the complaint cannot proceed as a forcible entry and detainer action; and that appellants' rights against Boardman Steel were limited to breach of contract.

{¶ 33} However, as noted by Boardman Steel, they did argue below that appellants had no standing to seek forcible entry and detainer because they were no longer the landlords and they had no continued ownership interests in the property. Boardman Steel did not argue below that appellants were limited to a breach-of-contract action, presumably because a defendant would not want to assist a plaintiff in determining its alternative actions. The court agreed with the

above arguments Boardman Steel did present but added that appellants may have rights concerning any rent due prior to the termination notice.

{¶ 34} The issue as to whether the court's limitation was erroneous is better discussed in the next assignment. As for a court allowing amendment rather than dismissing an action for refiling, this is a discretionary procedure the court can offer to a plaintiff but which the plaintiff need not accept. The act of giving permission to amend is not itself error and did not prejudice appellants.

{¶ 35} As aforementioned, the real question is whether the underlying bases for the court's decision were valid. In other words, it must be determined whether the court erred in finding that appellants had no ownership interest in the land underlying the license and thus no right to possession for purposes of forcible entry and detainer. This is the crux of the argument presented in appellants' second assignment of error.

## ASSIGNMENT OF ERROR NO. TWO

{¶ 36} As aforementioned, it is here that appellants present their main argument that they should be permitted to proceed with their forcible-entry-and-detainer action against Boardman Steel. They set forth various alternative arguments to support their entitlement to proceed as plaintiffs in such action.

{¶ 37} For instance, one of appellants' alternative arguments is that the grade crossing agreement (but not the utility-line licenses) can be considered a lease rather than a license due to its lease-like attributes, such as the requirement of rent, the ability to assign, and the fact that it was not revocable at will as is a typical license (but was only revocable for non-use or breach of condition). However, a lease carries a right to exclusive possession of a certain quantity of land for a term certain. See *Cincinnati Entertainment Assoc., Ltd. v. Hamilton Cty. Bd. of Cmmrs.* (2001), 141 Ohio App.3d 803, 812, 753 N.E.2d 884 (calling these indispensable elements of a lease), citing *Cuvier Press Club v. Fourth & Race Street Assoc., Ltd.* (1981), 1 Ohio App.3d 30, 34, 1 OBR 150, 439 N.E.2d 443. Here, there was no term, and possession was not exclusive as the railroad traversed the license, the licensor had the right to change and relocate the crossing, and the licensor had the right to allow a neighboring property owner to use the grade crossing as well. Thus, we decline to interpret the license as a lease.

{¶ 38} Besides the typical landlord/tenant situation, the forcible-entry-and-detainer statutes can also be used: "When the defendant is an occupier of lands or tenements, without color of title, and the complainant has the right of possession to them * * *." R.C. 1923.02. The magistrate found that Boardman

Steel was not an occupier without color of title and that appellants had no right to possession.

{¶ 39} As to the first element of this statute, Boardman Steel did not argue below and do not currently argue that there was a failure to state a claim regarding whether they were an "occupier without color of title." *For purposes of avoiding dismissal* of the forcible-entry-and-detainer action, it cannot be fathomed how appellants have not sufficiently alleged that Boardman Steel is an occupier without color of title. See *Brown v. Burdick* (1874), 25 Ohio St. 260, 268–269 (where a person who had a lease that turned out to be invalid was declared a stranger and was held to be occupying the land and tenements without color of title). Boardman Steel is alleged to have violated the terms of the license to use and occupy the land, and it refuses to comply with the termination notices provided to it. Thus, this portion of the magistrate's decision, adopted by the trial court, is struck.

{¶ 40} It is the second element of the statute that the parties disputed below and currently dispute on appeal. The magistrate agreed with Boardman Steel's argument that appellants have no ownership interest in or even a right to possession of the land underlying the licenses. Appellants' main contention on appeal is that this legal determination was incorrect. As appellants point out, the magistrate seemed to confuse appellants' interests with those of Boardman Steel. The fact that appellants and Boardman Steel were parties to a license combined with the fact that a license is a privilege rather than an interest in land does not mean that appellants, as the licensor, have no interest in the land. When a court says a license is a privilege to enter the land rather than an interest in the land, the court speaks of the one who is entering the land as the one who possesses the license and thus the one with the privilege. See, e.g., *Varjaski v. Pearch,* 7th Dist. No. 04MA235, 2006-Ohio-5268, 2006 WL 2846296, ¶ 12. In other words, the law regarding licenses refers to the licensee as having no interest in the land, not the licensor. See, e.g., *Mosher v. Cook United, Inc.* (1980), 62 Ohio St.2d 316, 317, 16 O.O.3d 361, 405 N.E.2d 720.

{¶ 41} Appellants then note that RVI had a fee interest in all of the railroad land and became the licensor regarding the various licenses granted by Y & S Railway. This was the state of affairs at the time that RVI assigned all its right, title, and interest in the Boardman Steel licenses to VPB. This assignment was performed in 1999, prior to the 2001 sale of the railroad to CCPA. The STB ratified this assignment. The STB also determined that the licenses could be renewed or converted to permanent easements without affecting any rights of CCPA, i.e., CCPA had no rights even after termination of the licenses. Appellants urge that the STB decision (expressing that the licenses are excluded from the CCPA sale and implying that the licensor maintains a possessory interest in

the land subject to the licenses) is controlling as the STB regulates railroad lines and rights-of-way and preempts state law contrary to its decisions.

{¶ 42} Considering the STB holding, appellants then reason that one cannot be a licensor unless he has some kind of interest in the land and that in order to own a license, renew a license or convert a license into an easement, the licensor must have an interest in the property. Appellants thus urge that VPB either owns a fee-simple interest in the land underlying the licenses or has an easement over such land. Either way, they would have a possessory interest for purposes of the forcible-entry-and-detainer statute, R.C. 1923.02(A)(5).

{¶ 43} It is at this point that our analysis of this issue must stop. As aforementioned, the trial court found that joinder of CCPA was not required because it determined property rights in favor of CCPA and contrary to appellants. The basis for that decision is now on appeal, and appellants wish us to reverse the trial court's judgment. In order to address this contention here, we would be required to determine the property rights of appellants compared to those of CCPA.

{¶ 44} We cannot do this in the absence of CCPA. That is, if we were to agree with the legal arguments presented by appellants, this would grant them a possessory interest in the property, which according to Boardman Steel is contrary to the rights allegedly possessed by CCPA. However, we cannot declare property rights in favor of appellants, knowing that that decision will affect CCPA's property rights, i.e., the court cannot adjudicate a possessory interest in the land when the decision would affect potential property rights of CCPA. Thus, CCPA's presence must be requested prior to proceeding to address property rights and possessory interests in the land subject to the licenses.

{¶ 45} This analysis ties in with Boardman Steel's misplaced argument that the STB decision is not binding upon it and cannot affect its rights in this action. To the contrary, the STB's decision is some evidence of what party retains an interest in the land underlying the licenses for purposes of seeking restitution of the land from the prior licensee. The STB's decision does not purport to bind the licensee. It merely establishes who is the licensor. The licensee has no right to argue (beyond seeking joinder) who its licensor should be. Nor can the licensee continue to argue potential rights of a nonparty who may not wish to assert those rights.

{¶ 46} (By way of comparison, a defendant-tenant could not argue in a forcible-entry-and-detainer or breach-of-lease action that some prior court decision naming the owner of the apartment building is not binding upon him. The tenant could attempt to join the alleged landlord who can then assert the rights outlined by the tenant or who can admit plaintiff is the proper landlord.)

{¶ 47} In support, if CCPA were to admit that it has no property rights (or at least no possessory interest for purposes of granting, terminating, and renegotiating the licenses) in the land underlying the four licenses at issue herein and that appellants retain such rights to grant, terminate, and renegotiate the licenses, then obviously Boardman Steel could not continue to argue that only CCPA can evict it. We cannot ascertain the proper plaintiff without CCPA's presence as the whole basis for the trial court's decision was a declaration of the property rights of CCPA versus appellants. CCPA may have a defense or claim to make, above those presented by Boardman Steel, that would defeat appellants' claim to be the proper forcible-entry-and-detainer claimant. Alternatively, CCPA may admit that it has no fee interest in the land subject to the license or at least no possessory right over that of the licensor's right.

{¶ 48} As aforementioned, Boardman Steel's main argument for dismissal was that appellants have no standing and that only CCPA had the right to negotiate a new license with Boardman or eject them from the property. As appellants' opposition to Boardman Steel's motion to dismiss noted, dismissal is not the remedy where a nonparty's presence is needed under Civ.R. 19(A). Rather, Civ.R. 19(A) provides that upon a motion under Civ.R. 12(B)(7) (for failure to join a party under Civ.R. 19), the court shall order that the nonparty be made a party. The trial court should have ordered that joinder here.

{¶ 49} In conclusion, although it can and did raise the issue that appellants have no standing and that CCPA is a necessary party, Boardman Steel cannot continue to argue for CCPA's property interest and against appellants' property rights in this manner, and we cannot properly address the parties' contentions without CCPA's knowledge and opportunity for participation. Since a decision cannot proceed without CCPA being given the opportunity to defend its property interest or to concede appellants' rights in the land subject to the license, the trial court's decisions adjudicating possessory interests in the land subject to the licenses and the resulting limitations upon appellants' remedies is reversed, and this case is remanded with orders to join CCPA so that it can assert its rights or concede its lack of rights in the present forcible-entry-and-detainer action.

{¶ 50} Due to our inability to resolve the question of whether appellants have standing to file the forcible-entry-and-detainer action at this time, the remaining arguments cannot truly be resolved as they essentially revolve around and rely upon the parties' interest in the land.

Judgment reversed
and cause remanded.

DeGenaro, P.J., and Waite, J., concur.