**TREINEN et al., Appellants,**

v.

**KOLLASCH–SCHLUETER et al., Appellees.**

[Cite as *Treinen v. Kollasch–Schlueter,* 179 Ohio App.3d 527, 2008-Ohio-5986.]

Court of Appeals of Ohio,
First District, Hamilton County.

No. C–070634.

Decided Nov. 21, 2008.

Gottesman & Associates and Zachary Gottesman, for appellants.

Drew & Ward Co., L.P.A., and Eric Holzapfel, for appellees.

MARK P. PAINTER, Judge.

{¶ 1} Plaintiffs-appellants Robert and Terri Treinen and David McKnight (collectively, "the Treinens") sued defendants-appellees Sharon Kollasch–Schlueter and Victor Lee to enforce a right of first refusal encumbering four adjoining lots located in Greenhills Village in Hamilton County, Ohio. After Schlueter sold her property to Lee, the Treinens and McKnight sued for breach of contract, seeking specific performance. Following a bench trial, the court found that Schlueter had properly extended the right of first refusal to the Treinens, and that they had failed to exercise their right. The court then granted judgment to Schlueter and Lee. We affirm.

## I. The Tebbens–Treinens Agreement

{¶ 2} Original owners William and Alice Tebben and Robert and Terri Treinen ostensibly granted to each other a reciprocal right of first refusal on the four adjacent lots and their accompanying housing units. The four units or lots all shared a common party wall. The language purporting to grant the right of first refusal stated that the parties granted to each other a reciprocal right of first refusal on their adjoining parcels in the event of a contemplated sale. The agreement's language extended the right of first refusal to the parties to the contract, "their heirs, successors, and assigns," and also stated that the right of first refusal constituted a covenant running with the land. The right, as the Treinens have noted in oral argument before this court, runs in perpetuity and is

found in an "agreement for common party wall" that had been filed with the deed. The granting language follows:

{¶ 3} "The herein parties hereby covenant and grant to each other respectively an exclusive and reciprocal [f]irst [r]ight of [r]efusal on their adjoining parcels in the event the sale of the same is contemplated. The sale price shall be determined by an FHA (Federal Housing Administration) appraisal * * *.

{¶ 4} "This agreement shall be binding upon the parties hereto, their heirs, successors and assigns and the agreements shall constitute covenants running with the land."

{¶ 5} It is likely that this granting language violates the rule against perpetuities,[1] and we asked the parties to supplementally brief the issue. But they had neither argued nor raised the issue below. And because the rule was not pleaded as an affirmative defense, it was waived.[2] Thus our disposition of this case does not require that we address the rule against perpetuities, so we pass on further addressing the issue—except to point out that the rule has life beyond law school and bar exams.

## II.  Notice and the Events Preceding the Sale

{¶ 6} We begin by noting that the Treinens testified that before the Schlueter sale, the right of first refusal had never been properly extended. In fact, on multiple occasions, the property had been transferred without notifying the holders of the first-refusal right and without providing an FHA appraisal for the property, probably because no one knew about it.

{¶ 7} In April 2005, Schlueter owned two lots, and Treinen and McKnight each owned one lot. That month, Schlueter decided to sell her lots. And according to Schlueter, the Treinens were notified of the contemplated sale of the property, but they were not interested in buying the lots.

{¶ 8} According to the Treinens, when they heard of the contemplated sale in April 2005, rather than contacting Schlueter directly to inform her of their intent to exercise their first-refusal rights, they instead contacted an attorney. But the Treinens' attorney did not contact Schlueter to express their interest in buying the lots.

---

1.  R.C. 2131.08(A).

2.  Civ.R. 8(C) and 12(H); *Mills v. Whitehouse Trucking Co.* (1974), 40 Ohio St.2d 55, 69 O.O.2d 350, 320 N.E.2d 668; *Mitchel v. Borton* (1990), 70 Ohio App.3d 141, 144, 590 N.E.2d 832, citing 1 Baldwin's Ohio Civil Practice (1988), Section 13.03.

{¶ 9} On August 3, 2005, the Treinens called Schlueter and told her of the right of first refusal that encumbered the property. Again the Treinens failed to indicate an interest in purchasing the lots.

{¶ 10} On August 9, 2005, Schlueter delivered a letter to the Treinens indicating that the fair market value of each lot was $78,500 (the same amount for which Schlueter had offered to sell the lots to Lee), and that the Treinens had until August 15, 2005, to offer $2,000 in earnest money and to procure a prequalification letter from a lender. Schlueter's letter noted that time was of the essence and that after August 15 the property would be placed on the market. The Treinens again did not respond. Instead, they sent the letter to their attorney.

{¶ 11} On August 15, 2005, Schlueter delivered another letter stating that she had acquired an FHA appraisal and that the lots had been appraised for $72,000 each. The letter further stated that the right of first refusal would expire the next day at 5:00 p.m., and that to exercise the first-refusal right, a written contract to purchase the lots had to be received before that time. The Treinens again forwarded the letter to their attorney, who, on the day the right was set to expire, wrote a letter to Schlueter questioning the accuracy of the FHA appraisal. But once again the attorney's letter did not indicate the Treinens' interest in purchasing the lots or their intention to exercise their first-refusal rights.

{¶ 12} Later, Schlueter's property was conveyed to Lee. The Treinens and McKnight then sued, claiming that the sale violated their rights of first refusal.

### III. The Assignments of Error

{¶ 13} In granting judgment for Schlueter, the trial court concluded that the right of first refusal had been extended but that the Treinens had failed to exercise that right. The court also noted that a certified FHA appraiser had properly appraised the parcels.

{¶ 14} On appeal, the Treinens argue that the trial court erred in finding that Schlueter had complied with the requirements concerning the right of first refusal. In support of this position, the Treinens argue that Schlueter had violated their right of first refusal by failing to (1) rescind an existing contract for the sale of the land; (2) address perceived errors, omissions, and mistakes in the FHA appraisal; and (3) give them a reasonable amount of time to exercise their right of first refusal. We dispose of these propositions in order.

### IV. A Duty to Rescind the Contract for Sale of the Property?

{¶ 15} The Treinens first argue that their first-refusal rights were violated when Schlueter contracted with Lee without first offering the property to them. They contend that a meaningful exercise of their first-refusal right was

impossible if the property was already under contract with another party. According to the Treinens, because the existing contract of sale to Lee had not been rescinded, the threat of litigation tainted their right of first refusal.

{¶ 16} The Treinens' argument is not persuasive. The Treinens have not cited any law supporting their contention here, and we are likewise unable to find any cases to buttress their position. Had the Treinens bought Schlueter's lots, the contract with Lee could have been rescinded. Because in this instance we are not convinced that the sales contract with Lee infringed on the Treinens' first-refusal right, this assignment of error is overruled.

## V. The FHA Appraisal

{¶ 17} The Treinens also argue that their right of first refusal was rendered meaningless by a faulty FHA appraisal. According to them, there were several errors, omissions, and mistakes in the FHA appraisal, and the appraisal itself indicated that the appraisal price did not accurately reflect repairs that would have had to be made by Schlueter. We are not convinced.

{¶ 18} Jill Kinder used an FHA form to appraise the property. Kinder was certified by Ohio and by the FHA to appraise property. She was qualified to do the appraisal. Kinder appraised each lot at $72,000 when Schlueter had already contracted to sell the property to Lee for $78,500 per lot. Kinder testified that even if all the necessary repairs had been made, that fact would not in itself have changed the $72,000 appraisal price. We note that the fair market value of the property ($78,500 per lot as indicated by the sales contract) was substantially more than the appraised value ($72,000) that had been offered to the Treinens.

{¶ 19} Though we understand the Treinens' position, the appraisal satisfied the contracted condition of offering the property at an FHA-appraised price. The offer to sell at the FHA-appraised price was exactly what the contract called for, and we cannot say that the appraisal did not comply with the terms of the contract. And the FHA-appraised price reasonably reflected the value of the property on the open market—in fact the FHA-appraised price offered to the Treinens was a steal (Schlueter would have lost money had the Treinens properly exercised their first-refusal right). Because the record fails to reflect an inadequate FHA appraisal, this assignment of error is overruled.

## VI. 24 Hours' Notice—Enough?

{¶ 20} The Treinens' final argument is that the 24-hour window for them to provide an offer was unreasonable. Under these specific circumstances, we cannot agree. As we have already noted, the Treinens testified that they had been apprised of the contemplated sale in April 2005. On August 3, 9, and 15, Schlueter communicated with the Treinens regarding the sale and the right of

first refusal. The Treinens had multiple opportunities, and months of time, to tell Schlueter that they were interested in exercising their right of first refusal—but they did not. In fact, even on August 15, when they received the final letter providing them with 24 hours to make an offer on the property, the Treinens did not voice their intention to exercise their first-refusal right. Instead, they sent the letter to their attorney and sat quietly, withholding their purported intent to exercise their first-refusal right.

{¶ 21} When the Treinens finally responded to Schlueter, they only quibbled about the FHA appraisal and again failed to convey their intent to exercise the first-refusal right. We note that the granting language was silent on when the right of first refusal would terminate, but under these unique circumstances, we hold that 24 hours was a reasonable amount of time for the Treinens to have exercised their first-refusal right—they had notice of the sale for months, they never voiced their intent to exercise the right of first refusal, and even on the day before the contemplated sale, they failed to convey their purported interest in the property. Instead, they sat idly while Schlueter sold the property, and then they sued. Specific performance is an equitable remedy. Here, equity would not have saved the Treinens, when they had failed to attempt to help themselves. We hold under these facts that Schlueter had complied with her obligations under the right of first refusal, and we therefore affirm the trial court's judgment.

Judgment affirmed.

HILDEBRANDT, P.J., and HENDON, J., concur.