[Cite as *Christiansen v. Schuhart,* 193 Ohio App.3d 89, 2011-Ohio-1199.]

COURT OF APPEALS
LICKING COUNTY, OHIO
FIFTH APPELLATE DISTRICT

| | | |
|---|---|---|
| CHRISTIANSEN et al., | : | JUDGES: |
| | : | |
| Appellants, | : | Hon. William B. Hoffman, P.J. |
| | : | Hon. Sheila G. Farmer, J. |
| v. | : | Hon. Patricia A. Delaney, J. |
| | : | |
| SCHUHART et al., | :: | Case No. 2010 CA 72 |
| | : | |
| Appellees. | : | |
| | : | O P I N I O N |


CHARACTER OF PROCEEDING:  Appeal from the Licking County Court of
Common Pleas Case No. 08 CV 1093 WDB



JUDGMENT:  AFFIRMED



DATE OF JUDGMENT ENTRY:  March 3, 2011



APPEARANCES:

Vicky M. Christiansen, for appellants.

David W. Pryor and Thomas J. Byrne, for appellees.

DELANEY, Judge.

{¶ 1} Plaintiffs-appellants Vicky and Jeffrey Christiansen appeal the July 21, 2010 judgment entry of the Licking County Court of Common Pleas following a bench trial.

## STATEMENT OF THE FACTS AND CASE

{¶ 2} Defendants-appellees Joe and Mary Estep were the owners and operators of the Licking County Equestrian Center ("LCEC"), located in rural southeastern Licking County. Plaintiffs-appellants Vicky and Jeffrey Christiansen are neighbors of the Esteps'. Ms. Christiansen boarded her horses at LCEC.

{¶ 3} In 2003, the Esteps were interested in selling the LCEC and approximately 90 acres of their property. Joe Estep approached the Christiansens to ask whether they would be interested in purchasing the LCEC and the surrounding property. The Christiansens ultimately agreed to purchase the LCEC and approximately 27.5 acres of land on which the horse facilities were located for $235,000.

{¶ 4} Ms. Christiansen, an attorney, agreed to draw up the legal documents for the transfer of the property. She had previously represented the Esteps on a minor, unrelated legal issue. The Esteps agreed to have the property surveyed at their expense. The Esteps did not consult an attorney to review the real estate purchase agreement.

{¶ 5} The real estate sales contract, entered on September 1, 2003, contained the following provisions:

{¶ 6} "ARTICLE 8 – RIGHT OF FIRST REFUSAL

2

**{¶ 7}** "8.02 In the event the Real Estate Purchase is closed, the Seller grants to Buyer a right of first refusal to purchase Seller's remaining property at fair market value determined by a) an appraiser acceptable to both Buyer and Seller or by a bona fide offer to purchase by a third party.

**{¶ 8}** "8.03 Buyer at Buyer's expense shall prepare and file the Right of First Refusal after the Closing.

**{¶ 9}** "* * *

**{¶ 10}** "<u>Article 10 – LICENSE/EASEMENT</u>

**{¶ 11}** "10.1 In the event the Real Estate purchase is closed, Seller grants to Buyer an easement and/or license to use the fields and wooded areas of Seller's remaining property for horse related activities including trail riding.  Buyer shall also have the right to remove hay at Buyer's expense from the fields of Seller's remaining property.

**{¶ 12}** "10.02 Buyer at Buyer's expense shall prepare and file the Easement/License after the Closing."  (Underlining sic.)

**{¶ 13}** On October 31, 2003, Ms. Christiansen prepared and presented the Esteps with the separate agreement entitled, "<u>LICENSE, EASEMENT, RIGHT OF FIRST REFUSAL, and NON-COMPETE AGREEMENT</u>" ("license/easement agreement").  (Underlining sic.)  The parties signed the license/easement agreement, and it was filed with the Licking County Recorder's Office on November 3, 2003.

**{¶ 14}** The license/easement agreement contained the following relevant provisions:

**{¶ 15}** "* * *

3

**{¶ 16}** "WHEREAS, part of the consideration for the Christiansens purchase of the Licking County Equestrian Center is the continued use of the entire Real Estate for equestrian activities and the right to purchase the remaining Real Estate in the event the Esteps desire to sell it;

**{¶ 17}** "* * *

**{¶ 18}** "1. The Christiansens shall have the right of first refusal to purchase all or any part of the remaining Real Estate * * * and the Esteps shall not sell, transfer or dispose of, or transfer any interest in any part of the remaining Real Estate until the Esteps have offered said interest to the Christiansens in writing and the Christiansens have declined the offer. The Christiansens shall have 30 days after the receipt of the written offer to decline or accept the offer. The written offer must include the name, address, and telephone number of the third party offeror and all of the terms and conditions of the offer. * * *

**{¶ 19}** "2. The Christiansens, their licensees, agents and assigns (i.e. boarders of the Licking County Equestrian Center) shall have the right to engage in equestrian activities on the Esteps' remaining Real Estate at no cost to them.

**{¶ 20}** "3. The Christiansens, their licensees, agents and assigns shall have the right to make and remove hay from the fields of the Esteps' remaining Real Estate at no charge to them. However, all costs for the making and removal of the hay shall be at the expense of the Christiansens. This provision does not require the Christiansens to make hay. In the event the Christiansens do not intend to make hay in any year, they shall notify the Esteps by May 15th.

**{¶ 21}** "* * *

4

**{¶ 22}** "6. This Agreement is binding upon the parties and upon their respective heirs, executors, administrators, successors and assigns as the owners of the remaining Real Estate and the Licking County Equestrian Center."

**{¶ 23}** In 2004, counterclaimants-appellees, Kenneth and Terry Schuhart, purchased the Esteps' original residence after the Esteps had built another residence on the remaining property. In the spring of 2007, the Schuharts began negotiating with the Esteps for the purchase of 60 acres of the Esteps' remaining property, which was the subject of the license/easement agreement. On May 1, 2007, the Schuharts offered to purchase the remaining 60 acres from the Esteps for $168,000. Per the terms of the agreements between the Christiansens and the Esteps, the Esteps presented this offer to the Christiansens. The Christiansens declined to exercise their option to purchase the 60 acres at that price.

**{¶ 24}** While the Schuharts and the Esteps were negotiating the sale of the property, the Christiansens became aware that the Esteps believed that the terms of the real estate sales contract and license/easement agreement that allowed the Christiansens to use the 60 acres for equestrian activities and to remove hay would terminate upon the sale of the property. In the Christiansens' written waiver of their right of first refusal, Ms. Christiansen advised the Esteps that she had spoken with the Schuharts to explain that the agreements applied to all subsequent owners of the Esteps' property.

**{¶ 25}** On October 7, 2007, the Schuharts made a second offer to purchase the 60 acres from the Esteps. The Schuharts offered $120,000. The Christiansens were informed of the offer, and the Christiansens waived their right of first refusal of the

5

property at that price. In December 2008, the Schuharts and the Esteps closed on their contract concerning the 60 acres. The Schuharts made a down payment to the Esteps and made monthly payments.

{¶ 26} In the spring of 2008, the Schuharts would not permit the Christiansens to remove hay from the 60 acres of property. Mr. Schuhart explained that he did not want the Christiansens to remove hay because the Christiansens' contractor damaged the property when he operated his tractor on the too-wet field, leaving large ruts in the field.

{¶ 27} On June 2, 2008, the Christiansens filed a complaint with the Licking County Court of Common Pleas against the Schuharts and the Esteps for breach of contract and injunctive relief. The parties engaged in unsuccessful mediation. The Christiansens filed an amended complaint on October 5, 2009, including claims for preliminary and permanent injunction of the license/easement agreement, breach of the license/easement agreement, and specific performance of the right of first refusal. The Schuharts filed a counterclaim for declaratory judgment and quiet title.

{¶ 28} The trial court held a bench trial on April 14-15, 2010. On June 15, 2010, the trial court filed its findings of facts and conclusions of law, determining that the Esteps had granted the Christiansens a license for the use of the 60 acres of property, rather than an easement. The trial court further found that no party was entitled to monetary damages for their claims. On July 21, 2010, the trial court filed its judgment entry, memorializing the findings of fact and conclusions of law.

{¶ 29} It is from this decision that the Christiansens now appeal.

## ASSIGNMENTS OF ERROR

{¶ 30} The Christiansens raise three assignments of error:

6

{¶ 31} "I. The court erred in determining the license, easement, right of first refusal and non-compete agreement (Trial Exhibit 4) was not an easement which would run with the land and be binding against all subsequent owners of the real estate.

{¶ 32} "II. The court erred in failing to determine that the Christiansens were not properly given the right of first refusal to purchase the real estate.

{¶ 33} "III. The court erred in not admitting plaintiff's Exhibits 26 and 27."

{¶ 34} The Christiansens argue in their first assignment of error that the trial court erred in finding that the license/easement agreement created a license between the Esteps and the Christiansens for the use of the remaining 60 acres of the property for equestrian activities and removal of hay. We disagree.

{¶ 35} The trial court determined the license/easement agreement to be ambiguous on its face because the real estate sales contract and the license/easement agreement defined the nature of the agreements for the use of the property with opposing terms: license and easement.

{¶ 36} The Seventh District Court of Appeals analyzed the differences between an easement and a license in *Varjaski v. Pearch*, Mahoning App. No. 04MA235, 2006-Ohio-5268, ¶ 11-12: " 'The basic definition of an easement is that it is the grant of a use on the land of another. * * * "When created by conveyance, the extent of the privilege of use to which the owner of an easement created by conveyance is entitled is dependent upon the provisions of the conveyance. The creation of an easement by conveyance consists in the creation of certain privileges of use. * * *' " *Alban v. R.K. Co.* (1968), 15 Ohio St.2d 229, 231-32, quoting from 2 Casner, American Law of Property, Section 8.64. 'Generally, the term "interest in land" means some portion of the title or right of

7

possession, and does not include agreements which may simply affect the land. * * * Thus, easements are "interests in land" subject to the Statute of Frauds, but licenses are not.' *Ferguson v. Strader* (1994), 94 Ohio App.3d 622, 627 * * *.

{¶ 37} "In contrast to an easement, a license is 'a personal, revocable, and nonassignable privilege, conferred either by writing or parol, to do one or more acts upon land without possessing any interests in the land.' *DePugh v. Mead Corp.* (1992), 79 Ohio App.3d 503, 511. A license has also been defined as 'an authority to do a particular act or series of acts upon another's land, without possessing any estate therein.' " * * * One who possesses a license thus has the authority to enter the land in another's possession without being a trespasser.' *Mosher v. Cook United, Inc.* (1980), 62 Ohio St.2d 316, 317 * * *."

{¶ 38} Because the trial court found the agreements to be ambiguous as to whether the parties intended a license or easement, the trial court interpreted the contract against the drafter, Ms. Christiansen, and used parol evidence to determine that the Esteps granted a nonassignable license to the Christiansens for the use of the 60 acres while it was in the Esteps' possession. Because it was a license, the terms of the agreements to use the property did not transfer to the Schuharts.

{¶ 39} " 'Generally, courts presume that the intent of the parties to a contract resides in the language they chose to employ in the agreement." *Lechner v. Borough Co.* (Sept. 2, 1999), Licking App. No. 98CA132, 1999 WL 770352, *2, quoting *Shifrin v. Forest City Ents., Inc.* (1992), 64 Ohio St.3d 635, 638, 597 N.E.2d 499, citing *Kelly v. Med. Life Ins. Co.* (1987), 31 Ohio St.3d 130, 509 N.E.2d 411, paragraph one of the syllabus. However, if the language used in a contract is unclear or ambiguous, extrinsic

8

evidence can be considered in an effort to give effect to the parties' intentions. *Kelly* at 132. In *Alexander v. Buckeye Pipe Line Co.* (1978), 53 Ohio St.2d 241, 374 N.E.2d 146, paragraph two of the syllabus, the Ohio Supreme Court established the following test for determining whether contract terms are ambiguous: "Common words appearing in a written instrument will be given their ordinary meaning unless manifest absurdity results, or unless some other meaning is clearly evidenced from the face or overall contents of the instrument." Parol evidence cannot be considered if no ambiguity appears on the face of an instrument. *Shifrin.*

{¶ 40} We agree that the real estate sales contract and the license/easement agreement are ambiguous in that the drafter referred to the parties' agreement about the use of the land as both a license and an easement. As seen above, a license and an easement give diametrically different interests in real property. The terms of the agreements allow the Christiansens to use the land for equestrian activities and for the removal of hay. The language used in the agreements does not specify any possessory interest, and as found within the definition of "license," these are certain acts upon the land that do not involve any possessory interest in the land. There is no language in the provision that states that there is a covenant that runs with the land. Further, the terms of the agreement are silent as to the maintenance of the land for the furtherance of the equestrian activities or removal of hay and the liability consequences for those activities.

{¶ 41} At trial, the Esteps testified that they thought the agreement to use the land would terminate when they sold the property. Ms. Christiansen testified that Mr. Estep repeatedly had asked that the agreement be limited to his family, but Ms. Christiansen had refused.

9

{¶ 42} The facts of the case further show that there is a question whether the Christiansens gained a possessory interest in the land, in that the Christiansens also bargained for the right of first refusal in the purchase of the remaining 60 acres of land. As the trial court remarked, if the Christiansens had an indefinite, possessory interest in the land for equestrian activities and the removal of hay, why would it be necessary for the Christiansens to bargain for the right of first refusal for the purchase of the land in which they already had an interest?

{¶ 43} We find no error in the trial court's determination that the real estate sales contract and license/easement agreement created a nonassignable license agreement between the Esteps and the Christiansens for the use of the 60 acres for equestrian activities and removal of hay. We further find this interpretation to be consistent with longstanding public policy against the restraint upon the alienation of real property. See *Durbin v. Durbin* (1957), 106 Ohio App. 155, 159, 153 N.E.2d 706.

{¶ 44} The Christiansens' first assignment of error is overruled.

{¶ 45} In their second assignment of error, the Christiansens contend that the trial court erred in failing to address the alleged breach of the right of first refusal. In the June 15, 2010 findings of fact and conclusions of law, the trial court reached the conclusion of law that the Christiansens were not entitled to monetary damages or specific performance for their claim that the Esteps breached the right of first refusal. We therefore find that the trial court addressed the Christiansens' claim on this issue.

{¶ 46} When the Schuharts made the offer to purchase the remaining 60 acres of property from the Esteps for $120,000, the Esteps relayed that offer in writing to the Christiansens pursuant to the terms of the real estate sales contract and the

10

license/easement agreement. The written presentation of the offer was a real estate purchase contract between the Esteps and the Schuharts. Relevant to this appeal, the Contract stated, "Price: The Buyer agrees to pay and the Seller agrees to sell said premises for the sum of One Hundred and Twenty Thousand Dollars ($120,000.00) which sum shall be payable as follows: Cash at closing; performance hereof contingent upon approval of lot split by appropriate government agencies."

{¶ 47} On October 18, 2007, the Christiansens responded to the Esteps, stating, "We waive our right of first refusal at that price." The Esteps accepted the Schuharts' offer to purchase the property for $120,000. The final closing documents reflect that the Schuharts and the Esteps agreed that the Schuharts would pay the Esteps a down payment of $10,000 and then make monthly payments to the Esteps pursuant to a mortgage.

{¶ 48} The Christiansens claim that they were not informed of all the terms of the offer pursuant to the agreements between the Esteps and the Christiansens. The real estate sales contract states, "In the event the Real Estate Purchase is closed, the Seller grants to Buyer a right of first refusal to purchase Seller's remaining property at fair market value determined by a) an appraiser acceptable to both Buyer and Seller or by a bona fide offer to purchase by a third party."

{¶ 49} The license/easement agreement states,

{¶ 50} "The Christiansens shall have the right of first refusal to purchase all or any part of the remaining Real Estate * * * and the Esteps shall not sell, transfer or dispose of, or transfer any interest in any part of the remaining Real Estate until the Esteps have offered said interest to the Christiansens in writing and the Christiansens

11

have declined the offer. The Christiansens shall have 30 days after the receipt of the written offer to decline or accept the offer. The written offer must include the name, address, and telephone number of the third party offeror and all of the terms and conditions of the offer."

{¶ 51} The phrase "terms and conditions" is not defined within the license/easement agreement.

{¶ 52} The Christiansens argued at trial that they would have exercised their right of first refusal if they had known that the Esteps would have accepted a private financing arrangement. In the Christiansens' second amended complaint, the Christiansens requested damages and specific performance requiring the Esteps to offer the Christiansens the same terms as offered to the Schuharts for the sale of the 60 acres of remaining real estate.

{¶ 53} "A 'first right of refusal,' also known as a 'right of first refusal,' is a promise to present offers to buy property made by third parties to the promisee in order to afford the promisee the opportunity to match the offer." *Latina v. Woodpath Dev. Co.* (1991), 57 Ohio St.3d 212, 567 N.E.2d 262.

{¶ 54} In the October 18, 2007 letter exercising their waiver of their right of first refusal, the Christiansens specifically stated that they waived their right "at that price." There was no indication in that letter, nor was there any evidence produced at trial, that the Christiansens expressed to the Esteps at that time that they waived their right of first refusal because of the "cash at closing" term or that the Christiansens would have been amenable to the purchase of the property at $120,000 if different financing terms were offered. Ms. Christiansen testified at trial that she was not interested in purchasing the

12

property because she already had the right to use it. Ms. Christiansen also testified that she would have purchased the property if she knew the Esteps would have accepted owner financing. Counsel for appellees cross-examined Ms. Christiansen as to the conflicting testimony she gave at deposition regarding her choice to exercise her waiver of the first refusal:

{¶ 55} "Question: So, it is your testimony today that had you been given those terms, let's say, owner financing terms, if it's fair to describe it as that, that you would have closed and you have purchased the property? Is that your testimony?

{¶ 56} "Answer: I guess that's speculative because I really don't know if I would have purchased the property. It depends on the price.

{¶ 57} "Question: Well, you know what the price is.

{¶ 58} "Answer: Um-hmm. Well, my position was that why should I purchase the property when I already have the right to use it."

{¶ 59} The trial court inquired further:

{¶ 60} "THE COURT: Let me ask you this. Let me ask you this. Would you have purchased the property from the Esteps for 120,000 at four percent interest if the Esteps financed the purchase?

{¶ 61} "MS. CHRISTIANSEN: I would.

{¶ 62} "THE COURT: You would – on that date you would have done that.

{¶ 63} "MS. CHRISTIANSEN: Because of the controversy."

{¶ 64} A judgment supported by some competent, credible evidence will not be reversed by a reviewing court as against the manifest weight of the evidence. *C.E. Morris Co. v. Foley Constr. Co.* (1978), 54 Ohio St.2d 279, 376 N.E.2d 578. A

13

reviewing court must not substitute its judgment for that of the trial court when there exists some competent and credible evidence supporting the judgment rendered by the trial court. *Myers v. Garson* (1993), 66 Ohio St.3d 610, 614 N.E.2d 742. Since the trier of fact is best able to view the witnesses and observe their demeanor when weighing the credibility of the offered testimony, there is a presumption that the findings of the trier of fact are correct. *Seasons Coal Co., Inc. v. Cleveland* (1984), 10 Ohio St.3d 77, 80, 461 N.E.2d 1273. While the Christiansens claim a breach of the agreement for right of first refusal, there is evidence that shows that the Christiansens were not interested in purchasing the property at all. See *Treinen v. Kollasch-Schlueter*, 179 Ohio App.3d 527, 2008-Ohio-5986, 902 N.E.2d 998 (plaintiffs/appellants could not use equitable remedy of specific performance for defendants/appellees' alleged failure to comply with right of first refusal when appellants knew of sale of property but failed to exercise their right of first refusal).

{¶ 65} Based on the evidence presented, we find no error in the trial court's determination that the Christiansens were not entitled to damages or specific performance on their claim for breach of the right of first refusal.

{¶ 66} The Christiansens' second assignment of error is overruled.

{¶ 67} The Christiansens argue in their third assignment of error that the trial court erred in not admitting their Exhibits 26 and 27. Exhibit 26 includes copies of the title-insurance policies for the properties the Schuharts purchased from the Esteps in 2004 and 2007. Exhibit 27 is the closing and mortgage documents between the Esteps and the Schuharts for the purchase of the 60 acres of land. The Schuharts and Esteps objected to the admission of the documents, and the trial court sustained their objection.

14

{¶ 68} The Christiansens argued that Exhibits 26 and 27 went to the Christiansens' claim for the breach of the right of first refusal; specifically, to the Esteps' compliance with providing the terms of the offer. The Christiansens also argued that Exhibit 26 went to the easement-versus-license question. The trial court sustained the appellees' objection to Exhibit 26 and also testimony about the title-insurance policies because he found them to be not relevant to the terms of the right of first refusal or to the question of whether the parties created an easement or license. The trial court sustained appellees' objection to Exhibit 27 because he found that the documents were not authenticated. Id. Later in the trial, however, Ms. Christiansen cross-examined Mr. Schuhart on Exhibit 27 over appellees' objections.

{¶ 69} The admission or exclusion of evidence is left to the sound discretion of the trial court. *Crickets of Ohio, Inc. v. Hines Invests., L.L.C.*, Fairfield App. No. 09-CA-51, 2010-Ohio-5815, at ¶ 47. "The term 'abuse of discretion' connotes more than an error of law or judgment; it implies that the court's attitude is unreasonable, arbitrary or unconscionable." *Blakemore v. Blakemore* (1983), 5 Ohio St.3d 217, 219. We agree that Exhibit 26 is not relevant to the interpretation of whether a license or easement existed between the Esteps and the Christiansens. As to Exhibit 27, the trial court refused to admit the documents, but Ms. Christiansen was permitted to inquire into the documents as to the financing arrangements of the property purchase. Upon our review of the record, we find no error rising to the level of an abuse of discretion.

{¶ 70} The third assignment of error is overruled.

{¶ 71} The judgment of the Licking County Court of Common Pleas is affirmed.

Judgment affirmed.

15

FARMER, J., concurs.

HOFFMAN, P.J., concurs in part and dissents in part.

_____

HOFFMAN, Presiding Judge, concurring in part and dissenting in part.

{¶ 72} I concur in the majority's analysis and disposition of appellants' second assignment of error. I further concur in the majority's analysis and disposition of appellants' third assignment of error as it relates to Plaintiff's Exhibit 27.

{¶ 73} I concur in the majority's disposition as it relates to Plaintiff's Exhibit 26. I find that the exhibit was self-authenticating, because it was produced by appellee Kenneth Schuhart in response to appellants' request for production of documents. I find it relevant because it is directly probative of the Schuharts' understanding of their purchase from the Esteps, thereby indirectly probative of the Esteps' intent regarding the duration of the disputed easement/license. Although I believe it was error not to have admitted the exhibit, I would find the error harmless in light of my decision as to appellants' first assignment of error.

{¶ 74} I respectfully dissent from the majority's disposition of appellants' first assignment of error. I do not find that different descriptions in the title or reference to the right created in the agreement itself necessarily create an ambiguity. It is the nature of the right created that controls.

{¶ 75} The trial court found that an ambiguity exists and interpreted the contract against appellants because it was drafted by Ms. Christiansen, who is an attorney. The majority opinion does not specifically state its position with regard to this construction. I

16

write to note that I am not convinced that the construction applies, because it appears that the parties had equal bargaining power with respect to the underlying purchase.

**{¶ 76}** The majority bases part of its decision on the fact that there is no language in the agreement that states that there is "a covenant that runs with the land." (Majority Opinion at ¶ 40.) While I agree that there is no such language in the agreement, the agreement at paragraph No. 6 clearly states that it is binding upon the parties and upon their heirs, executors, administrators, successors, and assigns. I find that such language is a clear expression of intent to create an easement, despite the Esteps' claim of their lack of understanding as to the legal import thereof.

**{¶ 77}** Because the agreement creates privileges of use and, unlike a license, is not personal, revocable, and nonassignable just to the contracting parties, I find that the agreement creates an easement.

**{¶ 78}** I would sustain appellants' first assignment of error.